# IN THE SUPREME COURT OF CALIFORNIA

ANGIE CHRISTENSEN,
Plaintiff and Respondent,

v.

WILL LIGHTBOURNE, as Director, etc., et al.,
Defendants and Appellants.

S245395

First Appellate District, Division Two
A144254

San Francisco City and County Superior Court
CFP-12-512070

---

July 8, 2019

Justice Liu authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Chin, Corrigan, Cuéllar, Kruger, and Groban concurred.

---

CHRISTENSEN v. LIGHTBOURNE

S245395


Opinion of the Court by Liu, J.


We granted review to decide whether a household member's income that is used to pay child support for a child living in another household counts as income "reasonably anticipated" to be "received" by the paying household within the meaning of Welfare and Institutions Code section 11265.2 for purposes of determining eligibility for state welfare benefits. The California Department of Social Services determined that it does, and we conclude that its determination was reasonable and therefore valid. We must also decide whether the policy of the California Department of Social Services treating court-ordered child support as "income" violates Welfare and Institutions Code section 11005.5 by counting the same funds as income twice: once to the paying household and once to the receiving household. We conclude that it does not. Accordingly, we affirm the judgment of the Court of Appeal.

## I.

We begin with an overview of the relevant federal and state statutes governing the provision of cash assistance to needy households and then describe the dispute in this case.

## A.

For many years, the federal Assistance to Family with Dependent Children (AFDC) program provided cash aid to needy families. (42 U.S.C. § 601, as in effect before Aug. 22, 1996; *Sneed v. Saenz* (2004) 120 Cal.App.4th 1220, 1229

(*Sneed*).) "The AFDC program [wa]s one of three major categorical public assistance programs established by the Social Security Act of 1935." (*King v. Smith* (1968) 392 U.S. 309, 313.) AFDC provided states with federal funds "on a matching funds basis to aid the 'needy child . . . who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with' any of the several listed relatives." (*Van Lare v. Hurley* (1975) 421 U.S. 338, 340, quoting former 42 U.S.C. § 606(a).) To qualify for federal funding under the AFDC program, states were required to operate a program consistent with the Social Security Act (42 U.S.C. § 301 et seq.). (*Townsend v. Swank* (1971) 404 U.S. 282, 285–286.) Doing so required state agencies to comply with federal requirements governing how to calculate an individual's income as well as what sources of income should be "disregard[ed]" in calculating income. (42 U.S.C. § 602(a) (1994).)

In 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act, which replaced the AFDC program with a program called Temporary Aid to Needy Families (TANF). (Pub.L. No. 104-193, 110 Stat. 2105; *Sneed, supra,* 120 Cal.App.4th at p. 1231.) In place of AFDC's system of federal matching funds, TANF provides states with block funding to distribute to poor families while requiring state plans to "limit the receipt of aid to a specified number of months" and "include certain elements such as requiring aid recipients to engage in specified work activities." (*Sneed,* at p. 1231, citing 42 U.S.C. §§ 607, 608.) Congress's purpose in enacting TANF was to "increase the flexibility of States" in operating programs designed to "provide assistance to needy families so that children may be cared for in their own homes or in the homes of

relatives" and to "end the dependence of needy parents on government benefits by promoting job preparation, work, and marriage." (42 U.S.C. § 601(a).)

To implement TANF, our Legislature undertook a "comprehensive review and overhaul of [the state's] welfare system" and enacted the California Work Opportunity and Responsibility to Kids (CalWORKs) program. (*Sneed*, *supra*, 120 Cal.App.4th at p. 1231.) The Legislature observed that "[e]ach family unit has the right and responsibility to provide for its own economic security by full participation in the work force to the extent possible. Each family has the right and responsibility to provide sufficient support and protection of its children, to raise them according to its values and to provide every opportunity for educational and social progress." (Welf. & Inst. Code, § 11205; all undesignated statutory references are to this code.) CalWORKs implemented a new aid calculation methodology designed to increase the work effort of aid recipients and to encourage recipients to seek and obtain more employment income. (*Sneed*, at p. 1232.)

To qualify for CalWORKs, a household's "reasonably anticipated income, less exempt income," must fall below the "maximum aid payment" for a household (sometimes called an "assistance unit") of its size. (§ 11450.12, subd. (b); Cal. Dept. of Social Services, Manual of Policy and Procedures § 44-207 (MPP).) The CalWORKs statute specifies that income is " 'reasonably anticipated' if the county is reasonably certain of the amount of income and that the income will be received" during the prospective, semiannual reporting period. (§ 11265.2, subd. (b).) Eligible applicants receive a cash grant equal to the difference between the family's income and the maximum aid payment. (§ 11450.)

3

The California Department of Social Services (Department) is vested with "full power to supervise every phase of the administration of public social services." (§ 10600.) The Department promulgates rules and standards for the implementation of the statutes it enforces. These rules and standards are adopted in compliance with the procedures, including notice and comment requirements, set forth in the California Administrative Procedure Act (Gov. Code § 11340 et seq.), and they are published in the MPP. (§§ 10554, 11209; see *Smith v. Los Angeles County Bd. of Supervisors* (2002) 104 Cal.App.4th 1104, 1109.) The Legislature also authorized the Department to "implement, interpret, or make specific the amendments to this division . . . by means of all-county letters or similar instructions from the department until regulations are adopted." (§ 10606.2, subd. (a).) The interpretations of the CalWORKs statute in the MPP and all-county letters "come[] from authoritative legal and policymaking levels of the agency." (*Sharon S. v. Superior Court* (2003) 31 Cal.4th 417, 436 (*Sharon S.*).)

Eligibility determinations for CalWORKs aid are made by county welfare departments in accordance with the Department's rules and regulations. (§§ 10800, 11209.) The Department's implementing regulations direct counties to consider only income that the county is "reasonably certain that the recipient will receive" during the six-month budgeting period. (MPP § 44-101(c); see also MPP § 44-102.) From this amount, counties subtract income deemed "exempt" by statute or regulation. (§§ 11450.12, subd. (b), 11451.5; see MPP § 44-111.) Under the AFDC program, a family could exempt from its gross monthly income the first $30 of income and one-third of each additional dollar of earned income. CalWORKs replaced

the AFDC exemption with a new income disregard of the first $225 of earned income or disability-based unearned income, plus 50 percent of each additional dollar of gross earnings. (§ 11451.5.) The greater income disregard under CalWORKs permits individuals to earn more income than was possible under the former AFDC program without risking a reduction in aid or becoming ineligible for aid, thereby effectuating the Legislature's purpose of promoting work and achieving "the greatest possible reduction of dependency." (§ 11207.) The CalWORKs statute does not specifically exempt any income that is garnished from a recipient's paycheck, nor does the statute's definition of income exclude debts that must immediately be paid.

Before the enactment of CalWORKs, a Department regulation allowed counties, "in [d]etermining [n]et [i]ncome," to "deduct[]" from gross income "actual payments made in support of a child or spouse not in the home, paid pursuant to a court order." (Cal. Dept. of Social Services, Manual Letter No. EAS-92-02: Standards of Assistance Income, former MPP § 44-113.9 (Mar. 1, 1992) p. 480 (Manual Letter No. EAS-92-02).) On October 14, 1997, two months after CalWORKs became law, the Department published a new All County Letter providing "counties with the instructions they requested for implementing the new grant structure and aid payment provisions of [Assembly Bill] 1542." (Cal. Dept. of Social Services, All County Letter No. 97-59: Implementation of Grant Structure and Aid Payment Provisions (Oct. 14, 1997) p. 1 (All County Letter No. 97–59).) In the letter, the Department concluded that the CalWORKs statute "eliminate[ed] the existing income disregards and replac[ed] them with new income disregards." (*Id.* at p. 3.) Among the income disregards that CalWORKs

eliminated in favor of the new exemption of the first $225 of income plus 50 percent of any remaining earned income was "court-ordered child/spousal support paid by family members to persons outside the home." (*Ibid.*) Consistent with its understanding of the changes in the law, the Department repealed the regulation that provided a deduction from income of court-ordered child support paid to a child not in the home. (Manual Letter No. EAS-92-02, *supra*, at p. 480.) During the rulemaking process, the Department explained that the former child and spousal support disregards "that were allowed previously under federal and state law have been replaced with disregards of $225 of disability based unearned income and/or earned income and then 50% of the remaining earned income as set forth in Welfare and Institutions Code Section 11451.5." (Cal. Dept. of Social Services, internal rulemaking file for CalWORKs Grant Structure and Aid Payment Regulations, Agency ORD No. 0498-11, Final Statement of Reasons for rulemaking under Assem. Bill 1542 (Stats. 1997, ch. 270) p. 10.) The Department has maintained this position for over 20 years.

**B.**

Angie Christensen (Christensen) lived with her husband, Bruce, their three children, and her three children from a prior marriage. She was ineligible for CalWORKs aid because she was receiving Supplemental Security Income benefits. (§ 11203, subd. (a).) Her three children with Bruce were ineligible for aid under the former "Maximum Family Grant Rule" statute, which provided that "the number of needy persons in the same family shall not be increased for any child born into a family that has received aid under this chapter continuously for the 10 months prior to the birth of the child." (Former § 11450.04, subd. (a), added Stats. 1994, ch. 196, § 1 and repealed Jan. 1, 2017, by

Stats. 2016, ch. 25, § 18.) Bruce had three other children who did not live in the home and to whom he paid child support: one who received CalWORKs aid and lived with the child's mother, one who was an adult for whom child support was being paid for arrearages, and one who was not receiving CalWORKs aid. Bruce was employed part time and also received unemployment insurance benefits. Child support payments were garnished from Bruce's income to support his three noncustodial children.

In October 2010, Christensen applied for CalWORKs aid to support herself and her family. San Mateo County concluded that her assistance unit for the purposes of calculating CalWORKs aid consisted of four people: Bruce plus Christensen's three children from her prior marriage. The county denied Christensen's application because her household's non-exempt income, including the amount deducted from Bruce's paychecks for child support for his noncustodial children, exceeded the maximum aid payment of $828 per month for a family of four. Had the garnished child support been excluded from Bruce's income, Christensen would have been eligible to receive CalWORKs aid.

Christensen requested an administrative hearing, arguing that the amounts garnished from her husband's wages and unemployment benefits as child support "could not be considered as 'reasonably anticipated to be received' and therefore should not be counted in either the eligibility or grant determination process." The administrative law judge agreed and instructed the county to recompute the family's eligibility for CalWORKs aid, omitting those amounts from Bruce's income.

The Director of the California Department of Social Services reversed and denied Christensen's claim. The Director reasoned that "no regulation . . . exempts child support payments paid by or garnished from an [assistance unit] member's earned or unearned income." Citing to All County Letter No. 97-59, the Director concluded that "the child support payments garnished from the claimant's husband's earned income and [unemployment insurance benefits] was correctly included as nonexempt available income in determining [the assistance unit's] eligibility for CalWORKs benefits."

Christensen filed a combined petition for writ of mandate and administrative mandamus (Code Civ. Proc. §§ 1085, 1094.5) as well as a complaint for declaratory relief in the superior court. The court ruled that the Department's policy of counting court-ordered child support payments as available income of CalWORKs applicants was contrary to the Department's own definition of income, which required that income be "currently available" to needy members of the family, and contravened section 11005.5 because it resulted in double-counting of aid. Accordingly, the court issued a writ of administrative mandate and declared the Department's policy invalid. The court denied the writ of mandate, and Christensen did not appeal that ruling.

The Court of Appeal reversed. It observed that "the CalWORKs statutes and regulations do not specifically prescribe how to treat child support paid by a noncustodial parent in determining the nonexempt income of the paying parent's assistance unit." (*Christensen v. Lightbourne* (2017) 15 Cal.App.5th 1239, 1252 (*Christensen*).) The court concluded that under *Yamaha Corp. of America v. State Board of Equalization* (1998) 19 Cal.4th 1 (*Yamaha*), the Department's interpretation of the law, which it has consistently maintained

8

over the 20 years since the inception of the CalWORKs program, was entitled to "great weight." (*Christensen*, at p. 1252.) Specifically, the court concluded that the Department's interpretation of " 'reasonably anticipated' " income as "gross income before any potential exemptions or deductions are subtracted" was "reasonable and worthy of deference" in light of the statute's legislative history. (*Id.* at p. 1255.) The court rejected Christensen's argument that because court-ordered child support paid by a noncustodial parent is not " 'available' " to meet the needs of the paying household, it must be excluded from the paying household's income. (*Id.* at p. 1256.)

The Court of Appeal also rejected Christensen's argument that the Department's policy of counting garnished child support as income resulted in double-counting of income in violation of section 11005.5. The court observed that "Christensen does not claim that any family's CalWORKs cash aid is being considered to deny another person or family CalWORKs aid." (*Christensen*, *supra*, 15 Cal.App.5th at p. 1258.) And the court explained that "child support paid to benefit a child living in a family receiving CalWORKs aid is not generally counted as income to that child's family" because, with exceptions not applicable here, "[f]ederal and state law require that CalWORKs applicants assign their rights to any child support payments to the county and state in order to receive CalWORKs aid." (*Id.* at p. 1259.)

We granted review.

## II.

The issue here is the validity of the Department's interpretation of the CalWORKs statutes. We review questions of statutory interpretation de novo. (*Reid v. Google, Inc.* (2010)

50 Cal.4th 512, 527.) "Deference to administrative interpretations always is 'situational' and depends on 'a complex of factors' [citation], but where the agency has special expertise and its decision is carefully considered by senior agency officials, that decision is entitled to correspondingly greater weight." (*Sharon S.*, *supra*, 31 Cal.4th at p. 436.) Where an agency's action is "quasi-legislative" or "the substantive product of a delegated *legislative* power conferred on the agency," the scope of our review is "limited to determining whether the regulation (1) is 'within the scope of the authority conferred' [citation] and (2) is 'reasonably necessary to effectuate the purpose of the statute' [citation]." (*Yamaha*, *supra*, 19 Cal.4th at pp. 8, 11.) By contrast, where an agency's action is interpretive or merely "represents the agency's view of the statute's legal meaning and effect," the agency's "interpretation of the meaning and legal effect of a statute is entitled to consideration and respect," but "commands a commensurably lesser degree of judicial deference." (*Id.* at pp. 7, 11.)

Although the classification of an agency's action as quasi-legislative or interpretive often guides our analysis, we have observed that "some rules defy easy categorization." (*Assn. of Cal. Ins. Cos. v. Jones* (2017) 2 Cal.5th 376, 397.) At times, it is "helpful . . . to imagine 'quasi-legislative' and 'interpretive' as the outer boundaries of a continuum measuring the breadth of the authority delegated by the Legislature. [Citation.] Thus, in certain circumstances, a regulation may have both quasi-legislative and interpretive characteristics — 'as when an administrative agency exercises a legislatively delegated power to interpret key statutory terms.' " (*Id.* at p. 397.)

**A.**

Section 11451.5 directs the Department to calculate "the income of the family" for the purposes of determining CalWORKs eligibility by calculating the sum of the applicant family's "earned income," meaning "gross income received as wages, salary, employer-provided sick leave benefits, commissions, or profits from activities such as a business enterprise or farming in which the recipient is engaged as a self-employed individual or as an employee," disability-based unearned income such as disability insurance benefits, and the family's "unearned income," which is any income that does not fall within the meaning of "earned" or "[d]isability-based unearned" income. (§ 11451.5, subds. (a), (b)(1)–(3).) CalWORKs aid is to be calculated as follows: "In determining the amount of aid paid . . . , the family's income, exclusive of any amounts considered exempt as income . . . , determined for the prospective semiannual period . . . , and then calculated pursuant to Section 11451.5, shall be deducted from the sum specified in [a table provided in the statute], as adjusted for cost-of-living increases . . . . In no case shall the amount of aid paid for each month exceed the sum specified" in a table provided in the statute. (§ 11450, subd. (a)(1)(A).)

The CalWORKs statute excludes from income the first $225 of income plus 50 percent of each additional dollar of gross earnings. (§ 11451.5.) The statute further provides that "[e]xcept as otherwise provided in this part, . . . 'income' shall be deemed to be the same as applied under the Aid to Families with Dependent Children [AFDC] program on August 21, 1996," with several additional exemptions for income that is "received too infrequently to be reasonably anticipated," for income "from college work-study programs," and for academic or

extracurricular awards or scholarships. (§ 11157, subd. (b).) Court-ordered child support is not among these statutory exemptions from income. The Department repealed its regulation providing for a deduction for "actual payments made in support of a child . . . not in the home" (Manual Letter No. EAS-92-02, *supra*, at p. 480), and its Manual of Policies and Procedures now specifies that "[p]ayments which do not fall within the limitations specified in the foregoing subsections, represent nonexempt income to be considered in determining the recipient's grant" (MPP § 44-111.5).

Christensen argues that the funds used to pay Bruce's child support obligations cannot constitute "income" to her household because her family can never actually receive or benefit from those funds, and therefore the funds are not "reasonably anticipated" to be "received" within the meaning of section 11265.2. Because the money used to pay child support is not actually available to her household, Christensen contends, that money cannot be counted as part of "the family's income" for purposes of calculating CalWORKs aid. (§ 11450, subd. (a)(1)(A).) We find this argument unpersuasive.

In *Heckler v. Turner* (1985) 470 U.S. 184 (*Heckler*), the high court explained that the principle of actual availability "traces its origins to congressional consideration of the 1939 amendments" to the Social Security Act, during which legislators expressed concern that state agencies might assume financial assistance from potential sources (e.g., a recipient's children) who might not actually contribute. (*Heckler*, at p. 200.) The requirement that income be actually available prohibits states from "conjuring fictional sources of income and resources by imputing financial support from persons who have no obligation to furnish it or by overvaluing assets in a manner that

attributes nonexistent resources to recipients." (*Ibid.*) This policy was endorsed by federal agencies administering the former AFDC program. (*Id.* at pp. 200–201.)

We recognized a comparable principle in *Cooper v. Swoap* (1974) 11 Cal.3d 856 (*Cooper*), where we held that treating " 'noncash economic benefits,' " such as shared housing, as " 'income' " under the former AFDC program was invalid. (*Id.* at p. 859.) We explained that "under the governing provisions of the federal Social Security Act only a recipient's *actual* available income may be deducted from his basic welfare benefit; arbitrary or constructive 'presumptions' of income are not permissible." (*Id.* at p. 870; see *Waits v. Swoap* (1974) 11 Cal.3d 887, 894–895 (*Waits*) [only the " '*actual value* of housing and utility benefits received could possibly constitute income to the recipient' " (citing *Cooper*, at p. 870)]; *Mooney v. Pickett* (1971) 4 Cal.3d 669, 680 [concluding that a county regulation denying general assistance to "employable" single men was invalid because "theoretical employability is a barren resource; it is inedible; it provides neither shelter nor any other necessity of life"].)

The agency in *Cooper* and *Waits* assigned "a fictional value" to benefits received by a recipient rather than attempting to measure the "actual value of the benefits received." (*Cooper*, *supra*, 11 Cal.3d at p. 870; *Waits*, *supra*, 11 Cal.3d at p. 890.) Here, by contrast, the child support payments garnished from Bruce's income were not "fictional," "theoretical," or merely " 'imputed.' " (*Heckler*, *supra*, 470 U.S. at p. 200; *Cooper*, *supra*, 11 Cal.3d at p. 870; *Mooney*, *supra*, 4 Cal.3d at p. 680.) Bruce received actual income — his wages plus his unemployment insurance benefits — from which child support payments were deducted. The circumstances here do not involve "imputing

financial support from persons who have no obligation to furnish it or by overvaluing assets in a manner that attributes nonexistent resources to recipients." (*Heckler*, *supra*, 470 U.S. at p. 200.)

Furthermore, section 11265.2, subdivision (b), which defines " 'reasonably anticipated' " income, is concerned not with whether income is actually or only theoretically available, but rather with an issue of timing, i.e., when income can be expected to be received. Specifically, the statute provides that "income shall be considered to be 'reasonably anticipated' if the county is reasonably certain of the amount of income and that the income will be received during the semiannual reporting period." (§ 11265.2, subd. (b).) This language was added to the CalWORKs statute in 2002, when the Legislature replaced counties' eligibility determinations, which were previously based on a monthly system, with a prospective budgeting system. Section 11265.2, subdivision (b) instructs the Department to count as gross income the amounts that it can expect an applicant will earn within a designated temporal period. The text of this provision, understood in light of its enactment history, does not set forth a requirement that funds be actually available to the applicant household in order to count as income.

Christensen further argues that the CalWORKs scheme did not displace the Department's earlier regulation excluding child support payments from income. She reads section 11157, subdivision (b)'s directive that "[e]xcept as otherwise provided . . . , 'income' shall be deemed to be the same as applied under the [AFDC] program on August 21, 1996" to preserve the Department's former policy (under AFDC) of deducting child support payments from income. In a related argument, amicus

curiae Harriett Buhai Center for Family Law argues that the Legislature's decision to exempt a certain amount of earnings from income when calculating CalWORKs aid (§ 11451.5) was not intended to abrogate the Department's "child support allocation" policy under AFDC, which existed independently of the earned income exemption revised by CalWORKs.

Section 11451.5, subdivision (a), specifies that "for purposes of subdivision (a) of section 11450" — that is, for purposes of calculating CalWORKs aid — certain income shall be treated as exempt, including the first $225 of earned income or disability-based unearned income, plus 50 percent of each additional dollar of gross earnings. As noted, subdivision (b) of the same section defines earned income "[f]or the purposes of this section" (i.e., for the purposes of section 11451.5) as "gross income received as wages, salary, employer-provided sick leave benefits, commissions, or profits from activities such as a business enterprise or farming in which the recipient is engaged as a self-employed individual or as an employee." This definition expressly applies to the determination of "the income of the family" under section 11450 for the purposes of calculating CalWORKs aid. Whatever aspects of the AFDC definition of income were preserved by section 11157, subdivision (b), the Legislature made clear in section 11451.5 that the definition of income and exemptions articulated in that section comprised a new scheme for calculating CalWORKs aid. (See § 11157, subd. (b) [retaining AFDC's definition of income "[e]*xcept as otherwise provided*" (italics added)].)

Furthermore, the Department's former policy treated the sums used to pay child support as part of the gross income of the noncustodial parent, subject to an income deduction. (See MPP, former §§ 44-113.9, 44-113.24, 44-113.241; see also Cal. Dept. of

Social Services, MPP, former § 44-113.242, eff. July 1, 1968 [providing that a "[d]eduction is made from income for" "support payments actually made to or for his dependents living elsewhere"].) Amicus's labeling of child support under the former policy as an "allocation" rather than an "exemption" appears inaccurate and in any event has no bearing on the meaning of the statutory text, which indicates that the definition of income and exemptions in section 11451.5 comprehensively replaced the former system of exemptions and deductions.

In sum, nothing in the text of the CalWORKs statute exempts or excludes funds used to pay child support from the definition of income. And the statute does not indicate that the Legislature intended to preserve the Department's prior policy of deducting such payments from income.

**B.**

Christensen's principal argument is that including child support paid by a noncustodial parent as part of the paying household's income "thwarts the primary purpose of both CalWORKs and child support." California's child support guideline "takes into account each parent's actual income and level of responsibility for the children," with the goal of placing "the interests of children as the state's top priority." (Fam. Code, § 4053, subds. (c), (e).) The aim of the CalWORKs program is similarly to allow families "to provide sufficient support and protection of [their] children." (§ 11205.) According to Christensen, counting money paid under the child support scheme as income to the paying family under CalWORKs, thereby rendering children in the paying family ineligible for

CalWORKs aid, risks undermining the programs' shared goals of supporting and prioritizing all children.

Christensen further argues that counting child support as income could create a perverse incentive for families like Christensen's to live separately in order to obtain the CalWORKs aid they need to support their children. (See Amicus Br. of Alliance for Children's Rights at p. 12 ["Requiring parents to choose between feeding their children and living together as a family simply cannot be part of a system designed to protect an institution that the Legislature declared is 'of fundamental importance to society in nurturing its members, passing on values, averting potential social problems, and providing the secure structure in which citizens live out their lives . . . .'" (citing § 11205)]; *McCormick v. County of Alameda* (2011) 193 Cal.App.4th 201, 218 [forcing families to live separately to preserve eligibility for CalWORKs "cannot be deemed to have been authorized by the Legislature"].) Counting child support as income for determining CalWORKs eligibility could have the additional effect of encouraging "deliberate attempt[s] to avoid . . . support obligations" by reducing earnings (*In re Marriage of Ilas* (1993) 12 Cal.App.4th 1630, 1638), thereby undermining the program's express goal of encouraging work efforts.

Christensen's arguments are not without force, and the exclusion she urges may have merit as a matter of policy. But the Legislature charged the Department with "full power to supervise every phase of the administration of public social services" (§ 10600), and this supervisory authority includes fact-specific determinations of eligibility for aid and application of the agency's judgment about how best to effectuate the purposes of the CalWORKs statute. (See 45 C.F.R. § 233.20(a)(3)(ii)(C)

["States may have policies which provide for allocating an individual's income . . . for the support of other individuals living in another household. Such other individuals are those who are or could be claimed by the individual as dependents for determining Federal personal income tax liability, or those he or she is legally obligated to support."].) The Legislature also expressly authorized the Department to "implement, interpret, or make specific" the provisions of the statute "by means of all-county letters or similar instructions from the department until regulations are adopted." (§ 10606.2, subd. (a).) Pursuant to this authority, the Department initially articulated its determination that CalWORKs "amends the method of determining net nonexempt income (NNI) in the grant computation by eliminating the existing income disregards and replacing them with new income disregards" in an All County Letter. (See *Yamaha, supra,* 19 Cal.4th at p. 7 [an agency's statutory interpretation is entitled to respect "whether embodied in a formal rule or less formal representation"].) In its briefing and at oral argument, the Department asserted that its decision that child support payments were no longer deductible as income was "discretionary" in nature and designed to "track the legislative intent" in enacting CalWORKs. We understand the Department to argue that its decision was, at least in part, an exercise of lawmaking authority delegated by the Legislature to fill gaps in the statutory scheme. (*Yamaha,* at pp. 10–11.)

Given the lack of any indication in the statute compelling or prohibiting the deduction of child support payments from income, we agree that the Department's decision to include child support payments as income is properly characterized as quasi-legislative. We must therefore decide whether the Department

acted "within the scope of the authority conferred" and whether its action was " 'reasonably necessary to effectuate the purpose of the statute.' " (*Yamaha, supra,* 19 Cal.4th at p. 11.) Christensen argues that the Department's decision was not reasonable because it conflicts with the Legislature's overriding policy goal of ensuring adequate support for all children. The Department counters that its interpretation of the Legislature's intent in passing CalWORKs — specifically, its understanding that the earned-income disregard was intended to encourage work and to replace AFDC-era disregards with a simpler grant calculation method in lieu of a patchwork of disregards — was reasonable.

We think the Department has the better argument. It is a fair inference that, in enacting CalWORKs and its expanded earned-income disregard, the Legislature sought a more streamlined approach to grant calculation as a means of improving the program's administrability. Moreover, although the elimination of the child support disregard might not directly advance the Legislative purpose of encouraging families to work more, it may operate to do so indirectly. For example, families paying court-ordered child support whose earned income is insufficient to make ends meet may ultimately decide to seek more earned income. Thus, the replacement of the child-support disregard with an earned-income disregard may function as an incentive for families to increase their earned income.

We therefore conclude the Department's interpretation was "reasonably necessary to implement the purpose of the statute." (*Yamaha, supra,* 19 Cal.4th at p. 11.) This is especially so where the Legislature has "left untouched" the Department's interpretation of the statute, despite making other amendments to the CalWORKs scheme over the years. (*Sara M. v. Superior*

*Court* (2005) 36 Cal.4th 998, 1015; see, e.g., Sen. Bill No. 1041 (2011–2012 Reg. Sess.) [amending exemption amounts by changing the calculation of eligibility for benefits]; Assem. Bill No. 1233 (1999–2000 Reg. Sess.) [clarifying that on-the-job training wages are not excluded from income].) The Legislature considered restoring the child support disregard in 1999, but the proposal was not enacted. (See Assem. Bill No. 1233 (1999–2000 Reg. Sess.) as introduced Feb. 26, 1999, § 6.) Indeed, the legislative history of this failed proposal provides some support for the Department's view that CalWORKs eliminated the previously existing child-support disregard, albeit inadvertently. (See Assem. Com. on Appropriations, Analysis of Assem. Bill No. 1233 (1999–2000 Reg. Sess.) as introduced Feb. 26, 1999 ["Prior to welfare reform, a family was entitled to disregard from any countable income the amount of child or spousal support paid to a person outside of the household . . . . The author indicates this provision was inadvertently repealed by the new disregard provision. The bill restores previous law."].)

Christensen does not contend that the CalWORKs statute must be construed to provide exclusions from income for garnishments to pay other debts. Instead, she argues that court-ordered child support obligations are distinguishable from other debts because CalWORKs and child support obligations "operate together to implement the legislative intent that all children . . . receive sufficient support"; because child support is a debt that has priority over debts owed to other creditors and cannot be modified without the consent of the local child support agency and the court (Fam. Code, §§ 4011, 4065); because child support obligations cannot be discharged in bankruptcy (11 U.S.C. §§ 523, subds. (a)(5), (a)(15); 42 U.S.C. § 656); and

because child support that is garnished for the benefit of children living in a different household, unlike other types of debt (e.g., car payments, furniture payments), does not even incidentally benefit the children living in the payor's household.

We agree that the law in many ways treats child support obligations differently from other debts. But we do not agree that the conclusion to be drawn from this special treatment is that the Department's policy frustrates the statute's purpose. As discussed, no exclusion for child support appears in the statute's text. And although the absence of a statutory exclusion may render some households ineligible for CalWORKs or reduce the amount of aid, the Legislature in enacting CalWORKs declared that "[e]ach family unit has the right and responsibility to provide for its own economic security by full participation in the work force to the extent possible." (§ 11205.) The statute makes clear that the Legislature sought not only to provide aid to needy families but also to encourage greater work effort by those families.

In sum, we hold that the Department's determination that funds garnished to pay child support for the benefit of a child living in another household are not exempt from the paying household's income for purposes of determining its eligibility for or amount of CalWORKs aid was a reasonable exercise of its delegated lawmaking authority and was therefore valid.

## III.

We now address Christensen's argument that the Department's policy of counting garnished child support as income to the paying household results in counting the same income twice in violation of section 11005.5.

Section 11005.5 says: "All money paid to a recipient or recipient group as aid is intended to help the recipient meet his individual needs or, in the case of a recipient group, the needs of the recipient group, and is not for the benefit of any other person. Aid granted under [Part 3 of Division 9 of the Welfare and Institutions Code, which now includes the CalWORKs program] . . . to a recipient or recipient group and the income or resources of such recipient or recipient group shall not be considered in determining eligibility for or the amount of aid of any other recipient or recipient group." The Legislature enacted this statute in 1973 "to insure that aid paid (1) is for the individual needs of its recipient, (2) is not for the benefit of any other person, and (3) shall not be viewed or treated as income available to any other person. To treat one person's aid as a reason to deny eligibility or to reduce assistance to which another is entitled amounts to defiance of the legislative proscription." (*Rogers v. Detrich* (1976) 58 Cal.App.3d 90, 101, fn. omitted; see *id.* at pp. 99–101 [discussing history of section 11005.5]; *id.* at p. 101 [holding that Supplemental Security Income received by one household member should not be considered in calculating eligibility for General Assistance for any other household member].)

Christensen points to the second sentence of section 11005.5 and argues that the child support payment garnished from Bruce's "income or resources" is used to determine her household's CalWORKs aid eligibility *as well as* the receiving family's aid eligibility or amount. "Under the Department's policy," Christensen contends, "the garnished child support 'income' received by the custodial family is 'considered in determining eligibility or the amount of aid' to the paying family, in violation of §11005.5." According to Christensen, the

policy "results in counting the same income twice" because the same funds are "counted as available to the paying family when the paying family applies for or receives CalWORKs" and "counted as available to the receiving family when that family also receives CalWORKs."

But Christensen's "double counting" argument misapprehends the character of the child support payment. As the Attorney General explains, "there is a distinction between the child support received by Bruce's noncustodial child, and the funds used to pay that support obligation." The Attorney General illustrates this distinction by observing that if one CalWORKs recipient buys a car from another CalWORKs recipient and agrees to pay monthly installments, it is not double counting to treat the funds used by the buyer to make car payments as the buyer's income while treating the payments received by the seller as the seller's income. Similarly here, the funds used to pay child support are counted as part of Bruce's income; as such, the funds are considered in determining Christensen's aid eligibility. The child support payment is an *expenditure* by Bruce for the benefit of the receiving family; it is considered in determining the receiving family's aid eligibility. (§ 11454.5, subd. (a)(3).) It is Bruce's *expenditure*, not his "income or resources" (§ 11005.5), that is considered in determining the receiving family's eligibility for aid. This does not run afoul of section 11005.5. (Cf. *Cervantez v. Sullivan* (9th Cir. 1992) 963 F.2d 229, 234, fn. 10 [rejecting plaintiffs' argument that because garnished child support payments count as income to the recipient for determining Supplemental Security Income eligibility, they cannot also be counted as income to the payor as "based on a flawed premise"; "[t]he garnishment regulation does not count child support income to

the payor; it counts as income the funds used by the payor to make the child support payments"].)

## IV.

We affirm the judgment of the Court of Appeal.

**LIU, J.**

**We Concur:**

**CANTIL-SAKAUYE, C.J.**
**CHIN, J.**
**CORRIGAN, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Christensen v. Lightbourne

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 15 Cal.App.5th 1239
**Rehearing Granted**

_____

**Opinion No.** S245395
**Date Filed:** July 8, 2019

_____

**Court:** Superior
**County:** San Francisco
**Judge:** Ernest H. Goldsmith

_____

**Counsel:**

Kamala D. Harris and Xavier Becerra, Attorneys General, Jonathan L. Wolff, Chief Assistant Attorney General, Janill L. Richards, Principal Deputy State Solicitor General, Julie Weng-Gutierrez, Assistant Attorney General, Geoffrey H. Wright, Associate Deputy State Solicitor General, Susan M. Carson, Jennifer A. Bunshoft and Michael J. Mongan, Deputy Attorneys General, for Defendants and Appellants.

Legal Aid Society of San Mateo County, Hope G. Nakamura, Trinh Phan; Western Center on Law & Poverty, Richard A. Rothschild, Alexander Prieto, Rebecca C. Miller; Legal Aid of Marin and Stephanie E. Haffner for Plaintiff and Respondent.

Betty Nordwind, Patrick Lynch, David Ettinger and Rebecca Fischer for Harriett Buhai Center for Family Law as Amicus Curiae on behalf of Plaintiff and Respondent.

Jennifer Braun, Angela Schwartz, Elise Weinberg, Nisha Kashyap, Rachel Stein; Remcho, Johansen & Purcell and Robin B. Johansen for Alliance for Children's Rights as Amicus Curiae on behalf of Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Michael J. Mongan
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
(415) 510-3377

Richard A. Rothschild
Western Center on Law & Poverty
3701 Wilshire Boulevard, Suite 208
Los Angeles, CA  90010
(213) 487-7211