Filed 4/6/21  P. v. Moorer CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B305731 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA286416) |
| v. | |
| D'ANDRE K. MOORER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Michael D. Abzug, Judge.  Affirmed.

Thomas T. Ono, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

While D'Andre K. Moorer (appellant) drove a vehicle, one of his passengers shot and killed Michael Livingston (Livingston). In 2007, a jury convicted appellant of first-degree murder. (Pen. Code, § 187, subd. (a).)[1] As a special circumstance, the jury found true that the offense was perpetrated by means of discharging a firearm from a motor vehicle with the intent to inflict death. (§ 190.2, subd. (a)(21).) With respect to enhancement allegations, the jury found true that the offense was committed for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)(A)), and that a principal personally discharged a firearm and thereby caused Livingston to suffer great bodily injury or death (§ 12022.53, subds. (d) & (e)(1)). Also, appellant pleaded guilty to possession of a firearm by a felon. (Former § 12021, subd. (a)(1).)

On the first-degree murder count, appellant was sentenced to life in prison without the possibility of parole, plus 25 years to life for the firearm enhancement. He appealed. The murder conviction was affirmed in *People v. Moorer* (July 21, 2009, B205740) [nonpub. opn.] (*Moorer I*).

In 2019, appellant filed a petition for resentencing under section 1170.95, claiming he was convicted under the natural and probable consequences doctrine that was abrogated by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437). The trial court appointed counsel, considered briefing by the parties, and then denied the petition without holding an evidentiary hearing. Appellant challenges that denial order on appeal. We find no error and affirm.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

# FACTS

## The Record Regarding the 2005 Shooting

"On March 29, 2005, appellant, a member of the Eight-Trey Hoovers gang known as 'Scandalous D,' was driving to Las Vegas with fellow gang member Donald 'Baby Jap' Shorts (Shorts) and Shorts' girlfriend Gloria Ramirez (Ramirez). On the freeway, appellant, who was the driver, drove near [Livingston], a member of the Long Beach O-Hood Crips gang, which was a rival to the Hoovers gang. Livingston, who was on the left side of appellant's car, exchanged gang signs and angry words with appellant and Shorts, who was in the front passenger seat. Livingston slowed down, dropped back, and moved to the right side of appellant's car. Appellant slowed down, keeping pace with Livingston, as the men continued to yell at each other.

"From the backseat, Ramirez could see Shorts' hands, back and shoulders moving. Ramirez ducked her head, believing that something bad was about to happen. Ramirez did not want to hear more arguing. She closed her eyes and began praying because of the behavior of appellant and Shorts. Maria Hernandez and Gladys Medrano, who were driving behind appellant, believed the occupants of the vehicles were going to argue or fight because they both slowed down, moved close together, and drove next to each other. Shorts fired four shots, shooting Livingston twice in the head, killing him and causing the car to crash. Appellant immediately exited the freeway, got back on, and drove to Las Vegas, laughing and exchanging jokes with Shorts.

"Ramirez testified that Shorts shot Livingston because the men threw gang signs at each other. Ross Garrett, a fellow gang member of Livingston, testified that when rivals throw gang

3

signs at each other, anything can happen, including murder. Los Angeles Police Officer Mario Cardona, a gang expert, testified that members of the Hoovers gang gain respect by committing violent crimes, including murder, and expect members to violently confront rivals, at the risk of losing respect and being attacked by fellow gang members. A younger gang member, who would not do anything to anger a senior member, is expected to protect the older member and to tell him if he is armed. He testified that appellant was well respected within the Hoovers gang and had been a member for at least seven years." (*Moorer I, supra,* B205740 at pp. 3–4.)

**Moorer I**

On appeal, appellant argued, inter alia, that the record contained insufficient evidence that he aided and abetted the murder "because [it] did not support the finding that appellant knew that Shorts had a gun or that Shorts intended to shoot Livingston." (*Moorer I, supra,* B205740 at p. 4.)

The appellate court disagreed.

It stated: "Appellant did not testify and we can only derive his intent from the circumstances of the incident, including his own actions. The evidence showed that appellant and Shorts, who were members of the Hoovers gang, engaged in a confrontation with Livingston, who was from a rival gang. The men yelled at each other and threw gang signs and Livingston maneuvered his car so that he was to the right of appellant's car. The jury could well conclude that rather than driving away from Livingston, appellant intentionally slowed down and matched Livingston's speed to help Shorts shoot Livingston. Indeed, Hernandez and Medrano believed that the men were about to fight because the cars slowed down and maintained their position

4

side by side.  In fact, before Shorts fired the gun, Ramirez could see that he was moving his shoulders and arms in the front of the car so she ducked her head because she knew that something bad was going to happen.  She also closed her eyes and began praying.  From this evidence the jury could infer that appellant, in the driver's seat with a clear view of Shorts, knew that Shorts was getting ready to shoot at Livingston.

"And, appellant did not exhibit surprise when Shorts shot Livingston.  The subsequent conduct of appellant may be relevant to prove motive and intent.  (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409 [jury could reasonably conclude that the defendant intended to aid and abet codefendant by remaining in position in front of the robbery victims and failing to show surprise at codefendant brandishing a firearm at the victims].)  After the shooting, appellant immediately got off the freeway, then got back on and continued to drive to Las Vegas, laughing and joking with Shorts.  We conclude that the evidence was sufficient to support the jury's conclusion that appellant intended to assist Shorts in shooting Livingston.

"Further, Officer Cardona's testimony . . . also provided evidence that appellant knew Shorts was armed and that he wanted to kill Livingston. . . .

". . . [T]he People proved beyond a reasonable doubt that appellant had the mens rea necessary to establish that he aided and abetted Shorts' actions." (*Moorer I, supra,* B205740 at pp. 4–6.)

**SB 1437**

SB 1437 went into effect on January 1, 2019 (see Stats. 2018, ch. 1015, § 4), added section 1170.95, and amended sections

5

188 and 189.  (*People v. Ramirez* (2019) 41 Cal.App.5th 923, 928 (*Ramirez*).)

As amended, section 188 provides:  "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3).)  As added by SB 1437, section 189, subdivision (e) provides:  "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) . . . in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life[.]"  (*Ramirez, supra,* 41 Cal.App.5th at p. 928)

Section 1170.95 permits a petitioner to file a petition for resentencing if he was convicted under a theory of felony murder or murder under the natural and probable consequences doctrine, and if he could not have been convicted under the current law.  (*Ramirez, supra*, 41 Cal.App.5th at p. 929.)  First, the trial court reviews the petition to determine whether any necessary information is missing.  (§ 1170.95, subd. (b)(2).)  Second, the trial court reviews the petition to determine whether the petitioner has made a prima facie showing that he falls within the provisions of the statute.  "If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response within

60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).) Third, the trial court holds "a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not been previously sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1).) "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges. The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3).)

**Appellant's Petition for Resentencing**

Appellant filed his petition for resentencing on January 7, 2019. He stated, among other things, that the jury convicted him pursuant to the felony murder rule or the natural and probable consequences doctrine, and that he did not act with the intent to aid and abet the actual killer in the commission of first-degree murder.

The trial court granted appellant's request for court appointed counsel.

7

Appellant filed a brief in support of the petition in which he argued that the trial court should issue an order to show cause, hold an evidentiary hearing and take the testimony of Shorts and Ramirez. At no point did appellant argue that he had made a prima facie showing of eligibility. Rather, he provided an October 23, 2016, declaration from Shorts, who declared: he and appellant are friends from different "Hoover" gangs; on their way to Las Vegas, a crazy driver pulled up next to their car on the left and threw gang signs; while appellant waved the crazy driver on, Shorts responded with his own gang signs; the crazy driver dropped back, came around to the right side of their car, and glided in close as he began yelling; the crazy driver reached over himself with his right hand; Shorts panicked and shot the crazy driver three or four times; afterwards, appellant was "kind of mad" and did not talk the whole way to Las Vegas; "no one in the car with me knew that that's what that was leading up to;" "I was the only one in the car that day who knew that I had a gun on me;" "at the time of the incident there was nothing" appellant could have done; appellant did not have higher gang status than Shorts; and appellant should not be held responsible for the shooting.[2]

The prosecution opposed and argued that appellant had not made a prima facie showing of eligibility because, inter alia, the jury necessarily found that appellant directly aided and abetted first-degree murder given that it found true the special

---

[2]     Appellant also offered a letter from Shorts. It did not qualify as a declaration because he did not sign it under penalty of perjury. (Code Civ. Proc., § 2015.5.) Thus, it was neither admissible nor relevant.

8

circumstance allegation under section 190.2, subdivision (a)(21) that the murder was committed by discharging a firearm from a vehicle with the intent to kill. Next, the prosecution argued that the Shorts declaration was inherently unreliable, and that it was inconsistent with the trial testimony and the recitation of facts in *Moorer I*.[3] As an exhibit, the People offered a copy of *Moorer I*.

At the hearing, defense counsel argued that the Shorts declaration established a prima facie showing of eligibility. The trial court replied that "the purpose of the prima [facie] showing is to make the prima [facie] showing before we start having evidentiary hearings, and [for] you . . . [to] suggest that you can . . . [have an] evidentiary hearing [at the prima facie review stage] seems to me to put the proverbial cart before the horse." Nonetheless, it indicated that it had considered the declaration.

The trial court issued a ruling that stated, "The prosecution's opposition makes a thorough and compelling showing that [appellant] was not convicted because of the 'natural and probable consequences' instruction that was delivered to the jury." It also stated: "[T]he evidence, arguments of counsel and, most importantly, the first-degree murder verdict and special circumstances findings . . . establish[] beyond a doubt that [appellant] was convicted because the jury found that he aided and abetted the actual shooter with the intent to kill the victim." Finally, the trial court concluded that the "operative language of the declaration lacks foundation. In short, Mr. [Shorts'] opinion that [appellant] did not have the intent to kill when [Shorts] fired his weapon is inadmissible. Moreover,

---

[3] The People offered other arguments but they are not relevant to our analysis.

9

. . . the balance of the *admissible* portions of the declaration [are] arguably inculpatory."[4]

The trial court ruled that appellant had failed to present a prima facie case of eligibility and denied the petition without an evidentiary hearing.

This appeal followed.

## DISCUSSION

Appellant claims the trial court denied him procedural due process when it refused to recognize his statutory right to introduce the declaration of Shorts into evidence during the prima facie review stage contemplated by section 1170.95, subdivision (c). Procedural due process and statutory interpretation issues are subject to de novo review. (*Christensen v. Lightbourne* (2019) 7 Cal.5th 761, 771; *Kwan Software Engineering, Inc. v. Hennings* (2020) 58 Cal.App.5th 57, 82.) Additionally, appellant contends that he made a prima facie showing of eligibility for resentencing under section 1170.95, subdivision (c) and the trial court therefore erred when it did not issue an order to show cause and set a hearing to determine whether to vacate the murder conviction, recall the sentence, and resentence appellant. This is a predominantly legal issue that is also subject to de novo review. (*People v. Garcia* (2020) 57 Cal.App.5th 100, 110 (*Garcia*).)

---

[4] It appears that the trial court did not deem its analysis of the Shorts' declaration as anything more than a secondary reason for denying the petition. At one point, it stated that "[p]rojections about what the defense may be able to establish at an evidentiary hearing do not discharge the defendant's prima facie burden; the defense has cited no authority to support that proposition nor does it square with the notion of a prima facie showing."

## I. The Trial Court's Handling of the Shorts Declaration at the Prima Facie Review Stage Under Section 1170.95, Subdivision (c).

Appellant's right to procedural due process served as a constitutional guardrail in the proceedings below. (*People v. Brown* (1999) 75 Cal.App.4th 916, 929 ["The inquiry in a due process claim is whether or not the challenged conduct has impinged upon the defendant's fundamental right to a fair process"].) Whether he was denied that guardrail hinges upon whether the trial court unfairly deprived him of a right to offer evidence with significant probative value. (*People v. Babbitt* (1988) 45 Cal.3d 660, 684.)

Section 1170.95, subdivision (c) requires a petitioner to make a prima facie showing of eligibility. It does not specify that new or additional evidence such as the Shorts declaration can be submitted to the trial court. The appellate courts have determined that section 1170.95, subdivision (c) "permits the superior court to review the record of conviction as well as the averment of the petition, and to summarily deny the petition without appointment of counsel where this initial review reveals that the petitioner is ineligible for relief as a matter of law." (*People v. Nunez* (2020) 57 Cal.App.5th 78, 90, fn. 5, review granted Jan. 13, 2021, S265918.) Case law has ironed out that the record of conviction includes the charging documents, court file, jury instructions, the prior opinion on direct appeal, and the record in that appeal. (*People v. Daniel* (2020) 57 Cal.App.5th 666, 676; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1140, review granted Mar. 18, 2020, S260598; *People v. Verdugo* (2020) 44 Cal.App.5th 320, 327, review granted Mar. 18, 2020, S260493; *People v. Woodell* (1998) 17 Cal.4th 448, 451.) No case has

11

interpreted section 1170.95, subdivision (c) as permitting a petitioner to submit new or additional evidence. Only after the prima facie review stage is new or additional evidence allowed. (*Garcia*, *supra*, 57 Cal.App.5th at pp. 117–118 [ "[o]nce a petitioner makes a prima facie showing, the evidentiary gate is open since there appears to be no limit on retrying the case"].)

Appellant essentially acknowledged this case law below. His brief stated, "While the [trial] court may consider both the record of conviction and additional evidence after an order to show cause has been issued (section 1170.9[, subdivision] (d)(3)), at the prima facie [review] stage the [trial court] must consider whether something is part of the record of conviction and then whether it is also admissible under the rules of evidence." The brief also stated that at the prima facie review stage, the trial court "may consider the abstract of judgment, charging documents, plea forms, . . . the trial proceedings/transcripts, and appellate court record and appellate opinion. Each of these items are considered part of the 'record of conviction' and admissible under the rules of evidence."

On appeal, appellant argues that "section 1170.95, [subdivision (d)(3)] permits the parties at the show cause hearing to 'offer new or additional evidence,' as well as rely on the record of conviction. In light of this possibility, appellant contends that the trial court could not categorically state at this point, beyond a reasonable doubt, that the proffered testimony of [Shorts] would not have entitled him to resentencing." He does not, however, offer any statutory interpretation to explain why section 1170.95, subdivision (c) permitted him to submit new or additional evidence at the prima facie review stage of the proceedings. Appellant's argument is a "general assertion, unsupported by

12

specific argument." (*People v. Stanley* (1995) 10 Cal.4th 764, 793.) He "apparently assum[es] this court will construct a theory supportive of his" appeal, but that "is not our role." (*Ibid.*) "One cannot simply say the court erred, and leave it up to the appellate court to figure out why. [Citation.]" (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368.) "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived. [Citations.]" (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862.)

We conclude that appellant failed to demonstrate that the trial court denied him procedural due process.

## II. Prima Facie Showing of Eligibility.

If the record of conviction establishes that a petitioner was convicted on a ground that remains valid notwithstanding the changes in the law spawned by SB 1437, then the petitioner is not eligible for relief under section 1170.95. (*People v. Verdugo, supra,* 44 Cal.App.5th at p. 330.) Appellant must demonstrate that he made a prima facie case that he was convicted on a natural and probable consequences theory and not on a direct aiding and abetting theory supported by a finding that he acted with malice. (§ 187, subd. (a) ["Murder is the unlawful killing of a human being . . . with malice aforethought"]; § 188, subd. (a)(1) & (2) [malice may be express or implied; express malice is when "there is manifested a deliberate intention to unlawfully take away the life of a fellow creature;" implied malice is when, inter alia, "the circumstances attending the killing show an abandoned and malignant heart;" except as stated in section 189, subdivision (e), a principal in a crime cannot be convicted of murder unless he or she acts with malice].)

13

Appellant suggests that he made a prima facie showing of eligibility because the jury was instructed on a natural and probable consequences theory, and because the Shorts declaration suggests that appellant did not harbor the intent to kill Livingston.

This suggestion falls prey to the false assumption that the Shorts declaration was admissible. It was not, as we have explained. More importantly, the section 190.2, subdivision (a)(21) special circumstance finding against appellant establishes that, per the jury, the "murder was intentional and perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person or persons outside the vehicle with the intent to inflict death." Thus, the jury found that appellant acted with express malice as currently defined because acting with the intent to inflict death qualifies as a manifested intention to unlawfully take away a human life. Appellant was not eligible for relief.[5]

---

[5]    In opposition to the section 1170.95 petition, the prosecution erroneously argued that the natural and probable consequences doctrine could not be used to prove first-degree murder in 2007 and therefore appellant could not have been convicted under that doctrine. (*People v. Chiu* (2014) 59 Cal.4th 155, 158–159 [changing the law in 2014 and holding that "an aider and abettor may not be convicted of first degree premeditated murder under the natural and probable consequences doctrine"].) Appellant contends that the trial court accepted the prosecutor's erroneous argument and therefore the denial of his petition must be reversed. But it did not expressly or solely rely on the prosecution's erroneous argument. Rather, it relied on the evidence, the first-degree murder conviction and the special circumstance finding. As we have explicated, the special

14

Alternatively, appellant contends that *People v. Torres* (2020) 46 Cal.App.5th 1168, 1179 (*Torres*), review granted June 24, 2020, S262011, dictates that a special circumstance finding under section 190.2, subdivision (a)(21) cannot be used to make a finding of ineligibility.

In *Torres*, the defendant was convicted on two counts of first degree felony murder. (*Torres*, *supra*, 46 Cal.App.5th at p. 1172.) The jury found true the special circumstance under section 190.2, subdivision (a)(17) that the murders were committed during the commission of robberies.[6] The jury also found true that the defendant aided and abetted the robberies as a "major participant" and with "reckless indifference to human life" for purposes of section 190.2, subdivision (d). (*Torres*, *supra*, 46 Cal.App.5th at p. 1172.)[7]

---

circumstance finding under section 190.2, subdivision (a)(21) supported the denial.

[6]     Section 190.2, subdivision (a)(17) applies to both robbery and burglary. (§§ 211, 212.5.)

[7]     Section 190.2, subdivision (d) provides: "Notwithstanding subdivision (c), every person, not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a) which results in the death of some person or persons, and who is found guilty of murder in the first degree therefor, shall be punished by death or imprisonment in the state prison for life without the possibility of parole if a special circumstance enumerated in paragraph (17) of subdivision (a) has been found to be true[.]"

Subsequently, the defendant filed a petition for resentencing under section 1170.95. The trial court denied the petition based on the special circumstance findings, concluding that those findings established that he could still be convicted of murder even after SB 1437 added section 189, subdivision (e). (*Torres*, *supra*, 46 Cal.App.5th at p. 1172; *People v. Gentile* (2020) 10 Cal.5th 830, 842.)[8]

*Torres* noted that *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) construed the meaning of the terms "major participant" and "reckless indifference to human life" in section 190.2, subdivision (d) in a "significantly different and narrower manner than courts had previously." (*Torres*, *supra*, 46 Cal.App.5th at p. 1179.) As a result, *Torres* held that the trial court erred in ruling that the pre-*Banks* and *Clark* robbery-murder special-circumstance findings by the jury established that the defendant was ineligible for section 1170.95 relief, i.e., that under section 189, subdivision (e), he could still be convicted.

We observe that "[o]ur appellate courts have recently split over whether such a pre-*Banks/Clark* special circumstance

---

[8] Section 189, subdivision (e) provides: " A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, [aided and abetted] . . . the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." Robbery is a listed felony in section 189, subdivision (a).

finding renders a petitioner ineligible for relief under section 1170.95 as a matter of law.  [Citation.]" (*People v. Jones* (2020) 56 Cal.App.5th 474, 478–479, review granted Jan. 27, 2021, S265854.)  In any event, the point is moot because appellant's jury made a special circumstance finding under section 190.2, subdivision (a)(21) and found that appellant acted with the intent to inflict death.  The jury did not make "major participant" and "reckless indifference to human life" findings under section 190.2, subdivision (d) with respect to a special circumstance finding under section 190.2, subdivision (a)(17).  *Torres* does not factor into our analysis.

All other issues are moot.

### DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

17