Filed 1/14/21  Villanueva v. Becerra CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DANNY VILLANUEVA et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>XAVIER BECERRA, as Attorney General, etc. et al.,<br><br>Defendants and Respondents. | F078062<br><br>(Super. Ct. No. 17CECG03093)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Mark W. Snauffer, Judge.

Michel & Associates, C.D. Michel, Anna M. Barvir, and Sean A. Brady, for Plaintiffs and Appellants.

Xavier Becerra, Attorney General, Thomas S. Patterson, Senior Assistant Attorney General, Paul Stein and P. Patty Li, Deputy Attorneys General, for Defendants and Respondents.

-ooOoo-

In 2016, the California Legislature closed a loophole in the Roberti-Roos Assault Weapons Control Act (Pen. Code,[1] §§ 30500, et seq., AWCA) by revising the statutory definition of assault weapons to include a class of weapons that were previously outside of AWCA's coverage, commonly known as "bullet-button" assault weapons.[2] (Sen. Bill No. 880 (2015-2016 Reg. Sess.) (Senate Bill 880); Stats. 2016, ch. 48, § 1, amending §§ 30515, 30900, adding 30680, eff. Jan. 1, 2017.)[3] Under the revised law, those who lawfully owned bullet-button assault weapons before the effective date of the statutory revision (i.e., Jan. 1, 2017) could keep them, subject to a requirement that all such weapons had to be registered by July 1, 2018.[4] (§§ 30900, subd. (b); 30680.) Additionally, and important to the present appeal, the California Department of Justice (DOJ) was directed to adopt regulations to implement the new registration requirement, and such regulations were expressly declared to be exempt from the Administrative Procedure Act (Gov. Code, § 11340 et seq., APA). (§ 30900, subd. (b)(5).) For

---

[1] The full title of the statutory scheme is the "Roberti-Roos Assault Weapons Control Act of 1989 and the .50 Caliber BMG Regulation Act of 2004." (Pen. Code, § 30500.) Unless otherwise indicated, all further statutory references are to the Penal Code.

[2] A "bullet-button" weapon is designed to require a tool such as a bullet to remove the ammunition feeding device or magazine, usually by using the tool or bullet to depress a recessed button or lever shielded by a magazine lock. (See Cal. Code Regs., tit. 11, § 5471.)

[3] Additionally at Assembly Bill No. 1135 (2015-2016 Reg. Sess.) (Assembly Bill 1135.) (See Stats. 2016, ch. 40, § 3; see also Assem. Com. on Public Safety on Sen. Bill No. 880 (2015-2016 Reg. Sess.) as amended May 17, 2016 [purpose of law's revision is to remove bullet-button loophole]; Sen. Com. on Public Safety on Sen. Bill No. 880 (2015-2016 Reg. Sess.) as amended March 28, 2016 [same].)

[4] The registration deadline was originally January 1, 2018, but it was subsequently changed to July 1, 2018. (Assem. Bill No. 103 (2016-2017 Reg. Sess.) (Assembly Bill 103); Stats. 2017, ch. 17, § 49.) If the registration requirements were met, an individual's lawfully owned bullet-button assault weapons would be grandfathered in and allowed. (§ 30680.)

convenience, we refer to the above described revisions to AWCA by its 2016 legislative bill number -- Senate Bill 880.[5]

The DOJ proceeded to adopt new registration regulations for registering bullet-button assault weapons, as required by Senate Bill 880. (See Cal. Code Regs., tit. 11, §§ 5469-5478.)[6] Plaintiffs[7] then filed the present action challenging the validity of the new regulations on two main grounds: (1) the regulations allegedly exceeded the scope of the statutory exemption from the APA and therefore had to comply with the APA, and (2) certain of the regulations allegedly sought to impermissibly enlarge or vary the statutory definition of assault weapons. The trial court rejected plaintiffs' challenge in toto, finding that the regulations adopted by DOJ were reasonably related to the purpose of implementing the registration requirement and did not exceed the scope of DOJ's regulatory authority. Plaintiffs now appeal, raising substantially the same issues as were presented in the trial court. We conclude the trial court correctly ruled. The subject regulations came within DOJ's statutory exemption from the APA and are reasonably consistent with AWCA's governing statutes. Accordingly, the judgment of the trial court is affirmed.

---

[5] We recognize there was a parallel bill in the State Assembly, i.e., Assembly Bill 1135, which provided the same statutory revisions as Senate Bill 880. For ease of expression, we refer simply to Senate Bill 880 (rather than to both bills) in identifying the new law.

[6] We refer to the challenged regulations as the registration regulations, or simply the regulations.

[7] Plaintiffs are individual gun owners (Danny Villanueva, Niall Stallard, Ruben Barrios, Charlie Cox, Mark Stroh, Anthony Mendoza) and an association (California Rifle & Pistol Association, Incorporated) that are allegedly impacted by the new registration regulations.

## FACTS AND PROCEDURAL HISTORY

### *Bullet-Button Assault Weapons*

Under the former version of AWCA applicable before Senate Bill 880 took effect, the question of whether certain semi-automatic weapons were classified as assault weapons depended on, among other things, whether the weapons had "the capacity to accept a detachable magazine." (See former § 30515, subd. (a)(1), (a)(4); Stats. 2016, ch. 48, § 3.) A " 'detachable magazine' " was defined as any ammunition feeding device that could be removed readily from the firearm "with neither disassembly of the firearm action nor use of a tool being required." (See former Cal. Code Regs., tit. 11, § 5469, subd. (a); cf. Cal. Code Regs., tit. 11, § 5471, subd. (m).) A bullet or cartridge was considered a tool. (See former Cal. Code Regs., tit. 11, § 5469, subd. (a).) As a result of these definitional standards, where a tool such as a bullet was needed to remove the magazine, there was no detachable magazine and the weapon was technically not an assault weapon under AWCA, even if in all other respects it could function as an assault weapon. This created what was referred to in the legislative committee reports relating to Senate Bill 880 as the "bullet button loophole." (See, e.g., Sen. Com. on Public Safety on Sen. Bill No. 880 (2015-2016 Reg. Sess.) as amended March 28, 2016, pp. 5-8; Assem. Com. on Public Safety on Sen. Bill No. 880 (2015-2016 Reg. Sess.) as amended May 17, 2016, pp. 1-6.) The same legislative committee reports reflected a concern that weapons which are otherwise functionally the same as illegal assault weapons should not be excluded from coverage under AWCA merely because a small tool or bullet is used by the gun owner to quickly eject and reload ammunition magazines. It was expressed by the bill's author that unless the bullet-button loophole is closed, "the assault weapon ban is severely weakened, and these types of military-style firearms will continue to proliferate on our streets and in our neighborhoods." (Assem. Com. on Public Safety on Sen. Bill No. 880 (2015-2016 Reg. Sess.) as amended May 17, 2016, p. 3.)

4

***Senate Bill 880 Closes the Bullet-Button Loophole, Requires Registration***

As noted, in Senate Bill 880 the Legislature closed the bullet-button loophole as to particular types of semi-automatic weapons, effective January 1, 2017.  It did so by modifying the definition of what would constitute an assault weapon under certain provisions of section 30515.  Under the former wording of subdivision (a)(1) and (a)(4) of that section, either a semi-automatic centerfire rifle or a semi-automatic pistol that possessed one or more other specified features or attributes would constitute an assault weapon if the weapon *also* had the "capacity to accept a detachable magazine."  (See former § 30515, subd. (a)(1), (a)(4); Stats. 2016, ch. 48, § 3.)  As we have explained, this created a loophole for certain weapons because a magazine was not considered "detachable" if a simple tool such as a bullet had to be used to remove it.  Under the revised statutory definition created by Senate Bill 880, the phrase "the capacity to accept a detachable magazine" was deleted from subdivision (a)(1) and (a)(4) of section 30515 and replaced with the words "*does not have a fixed magazine*."  (§ 30515, italics added; Stats. 2016, ch. 48, § 3.)  Moreover, the term " 'fixed magazine' " was expressly defined to mean "an ammunition feeding device contained in, or permanently attached to, a firearm in such a manner that the device cannot be removed without disassembly of the firearm action."  (§ 30515, subd. (b).)  As the latter definition reflects, the mere use of a tool to quickly remove the magazine would no longer create an exception.  In other words, under Senate Bill 880, bullet-button weapons would no longer be automatically excluded from the definition of assault weapons under section 30515, subdivision (a)(1) and (a)(4), since a magazine that is easily removable with a bullet or other small tool plainly "does not have a fixed magazine" as that term is defined under the new law.

The second major part of Senate Bill 880 was to provide a mechanism to grandfather the bullet-button assault weapons that were lawfully owned in California prior to the new law.  This was largely accomplished through a registration requirement set forth in a newly added subdivision (b) to section 30900.  (Stats. 2016, ch. 48, § 3.)  As

5

provided in section 30900, subdivision (b), the new registration requirement was as follows:

> "(1) Any person who, from January 1, 2001, to December 31, 2016, inclusive, lawfully possessed an assault weapon that does not have a fixed magazine, as defined in Section 30515, including those weapons with an ammunition feeding device that can be readily removed from the firearm with the use of a tool, shall register the firearm before July 1, 2018, but not before the effective date of the regulations adopted pursuant to paragraph (5), with the department pursuant to those procedures that the department may establish by regulation pursuant to paragraph (5).
>
> "(2) Registrations shall be submitted electronically via the Internet utilizing a public-facing application made available by the department.
>
> "(3) The registration shall contain a description of the firearm that identifies it uniquely, including all identification marks, the date the firearm was acquired, the name and address of the individual from whom, or business from which, the firearm was acquired, as well as the registrant's full name, address, telephone number, date of birth, sex, height, weight, eye color, hair color, and California driver's license number or California identification card number.
>
> "(4) The department may charge a fee in an amount of up to fifteen dollars ($15) per person but not to exceed the reasonable processing costs of the department. The fee shall be paid by debit or credit card at the time that the electronic registration is submitted to the department. The fee shall be deposited in the Dealers' Record of Sale Special Account to be used for purposes of this section.
>
> "(5) The department shall adopt regulations for the purpose of implementing this subdivision. These regulations are exempt from the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code)."

As the foregoing statutory provisions make clear, persons who prior to January 1, 2017, had lawfully possessed an assault weapon that "does not have a fixed magazine," including weapons with a magazine that "can be readily removed from the firearm with the use of a tool" – in other words, bullet-button assault weapons – had to register them before July 1, 2018. (§ 30900, subd. (b)(1).) To implement this registration requirement,

6

DOJ was directed in the statute to adopt regulations, and such regulations were declared to be exempt from the APA. (§ 30900, subd. (b)(5).)

Finally, under Senate Bill 880, section 30680 was enacted. This section created an exemption from the application of section 30605 (the prohibition against the possession of an assault weapon) for persons who lawfully possessed bullet-button assault weapons prior to January 1, 2017, if they timely satisfied the registration requirements of section 30900 as set forth in section 30680. (§ 30680.)

### *DOJ Adopts Registration Regulations*

DOJ adopted new registration regulations for registering bullet-button assault weapons, as required by Senate Bill 880, and the regulations were duly published by the Office of Administrative Law. The new regulations became effective on July 31, 2017, and are published at California Code of Regulations, title 11, sections 5469 through 5478. Said regulations cover the following topics or subject matter: a description of the types of weapons that must be registered and definitions of the statutory terms governing the registration requirements (Cal. Code Regs., tit. 11, §§ 5470-5472); the process for registering via DOJ's website and the information required to be provided (*Id*. §§ 5473-5474)[8]; joint registration requirements (*Id*. § 5474.1); serial number requirements for registering homebuilt weapons (*Id*. § 5474.2); the required registration fee (*Id*. § 5475); the deadlines for submitting registrations and complying with requests for additional information or documentation (*Id*. § 5476); the prohibition on illegal modifications to registered weapons (*Id*. § 5477); and the process for voluntary deregistration (*Id*. § 5478).

### *Plaintiffs Action Filed in Trial Court Challenging Regulations*

On September 7, 2017, plaintiffs filed their complaint in the trial court challenging the registration regulations adopted by DOJ. The defendants named in the complaint

---

**8** It appears that section 5473 of title 11, California Code of Regulations, was repealed in 2019.

were Xavier Becerra, in his official capacity as Attorney General for the State of California, Stephen Lindley, in his official capacity as Chief of the DOJ Bureau of Firearms, and DOJ (collectively DOJ or defendants). The complaint alleged causes of action for declaratory and injunctive relief on the grounds that the regulations (1) exceeded the scope of the limited APA exemption stated in section 30900, subdivision (b)(5), by attempting to do more than implementing a registration program for bullet-button assault weapons, and (2) sought to impermissibly expand the statutory terms in AWCA. Among other things, the complaint asserted that the new regulations added numerous definitions of terms (while deleting others) and imposed requirements allegedly unrelated to the registration of bullet-button assault weapons. Allegedly, to the extent such regulations went beyond the subject of implementing a registration program for bullet-button assault weapons, the APA statutory exemption *did not apply* and DOJ was required to follow the formal public comment process of the APA. Additionally, the regulations also allegedly exceeded DOJ's authority by including bullet-button *shotguns* in the definition of assault weapons, even though Senate Bill 880 had only referred to bullet-button rifles and pistols, not shotguns.

DOJ filed a demurrer to the complaint, contending among other things that its determination to proceed under the statutory exemption from the APA pursuant to section 30900, subdivision (b)(5), rather than going through the formalities of the APA process in adopting the new regulations, was a discretionary *administrative decision* that can be reviewed or challenged only through a writ of mandate, not declaratory relief. The trial court sustained the demurrer on that ground, with leave to amend to allow plaintiffs to "seek writ relief." On March 21, 2018, plaintiffs filed an amended pleading – namely, a first amended verified petition for writ of mandate and complaint for declaratory and injunctive relief (the first amended complaint). While the underlying allegations were essentially the same, the first amended complaint added distinct claims seeking review by writ of mandate, including on the ground that DOJ abused its discretion by adopting the

8

new regulations on a " 'file and print' " basis (i.e., under the APA exemption), rather than doing so in accordance with the formal public comment process of the APA.

*Hearing and Order Denying Relief*

On May 25, 2018, a hearing was held in the trial court on plaintiffs' first amended complaint to determine whether plaintiffs were entitled to a writ of mandate and/or other relief under the first amended complaint. Following oral argument, the matter was taken under submission. On May 30, 2018, the trial court issued its order denying the petition for writ of mandate and other relief. In its order, the trial court held that DOJ did not exceed its proper authority but acted within the parameters of its exemption from the APA. According to the trial court, the regulations adopted by DOJ reasonably implemented and properly filled in the details of the authorizing statute, thereby carrying out the intent of the Legislature that DOJ create a registration program for bullet-button assault weapons. Therefore, the trial court denied all relief and judgment was subsequently entered in favor of defendants. Notice of entry of judgment was filed on July 6, 2018. Plaintiffs timely filed their notice of appeal from the judgment.

## DISCUSSION

### I. Standard of Review

As noted, the trial court's ruling denied all relief under the first amended complaint, concluding the regulations did not exceed the scope of the APA exemption and were a reasonable and proper implementation of SB 880's directive that the DOJ adopt registration regulations covering the bullet-button assault weapons. Plaintiffs' appeal argues the trial court erred in these conclusions. As explained below, our review is primarily de novo.

We consider the proper standard for reviewing the action of a state agency in the present context. "Where, as here, the petition seeks a writ of mandate under Code of Civil Procedure section 1085, our review is limited to a determination of whether the agency's decision was arbitrary, capricious, entirely lacking in evidentiary support,

9

unlawful, or procedurally unfair. [Citation.] Independent review is required, however, where the issue involves statutory or regulatory construction, such as whether the agency's action was consistent with applicable law." (*California School Bds. Assn. v. State Bd. of Education* (2010) 186 Cal.App.4th 1298, 1313-1314.) Since the present appeal involves statutory or regulatory review and/or the question of whether DOJ's action was consistent with applicable law, we apply independent or de novo review. (*Western States Petroleum Assn. v. Board of Equalization* (2013) 57 Cal.4th 401, 415.) "[W]hen an implementing regulation is challenged on the ground that it is 'in conflict with the statute' [citation] or does not 'lay within the lawmaking authority delegated by the Legislature' [citation], the issue of statutory construction is a question of law on which a court exercises independent judgment." (*Ibid*.) To the extent DOJ's application or interpretation of law within its agency expertise is at issue, we exercise our independent judgment, but we also consider whether any deference to the determination of said agency is appropriate to the circumstances of the agency action. (*Yamaha Corp. v. America v. State Board of Equalization* (1998) 19 Cal.4th 1, 7-8.)

If the APA is applicable to an agency's adoption of regulations, any regulations that substantially fail to comply with the APA's procedural requirements may be judicially declared invalid. (*California School Bds. Assn. v. State Bd. of Education*, *supra*, 186 Cal.App.4th at p. 1328.) Such APA questions of law are reviewed by this court de novo without deferring to the agency. (*Sims v. Department of Corrections & Rehabilitation* (2013) 216 Cal.App.4th 1059, 1071; *California Advocates for Nursing Home Reform v. Bonta* (2003) 106 Cal.App.4th 498, 506.)

Plaintiffs also challenge the trial court's demurrer ruling that required plaintiff to plead writ of mandate, rather than declaratory relief, for alleged failure to comply with the APA. The standard of review on appeal from an order sustaining a demurrer is de novo. (*California School Bds. Assn. v. State Bd. of Education*, *supra*, 186 Cal.App.4th at p. 1313; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

**II. The Inclusion of Shotguns in the New Regulations – Issue Rendered Moot by Subsequent Statutory Amendment**

One of plaintiffs' main contentions in the instant appeal is that the DOJ overstepped its authority when it included bullet-button *shotguns* in the registration regulations and required that such shotguns be registered as assault weapons by the July 1, 2018 deadline. (See Cal. Code Regs., tit. 11, § 5470, subd. (d) [requiring registration of semi-automatic shotguns that have a bullet button].) The legal principle behind plaintiffs' argument is that "agencies do not have discretion to promulgate regulations that are inconsistent with the governing statute, or that alter or amend the statute or enlarge its scope." (*Slocum v. State Bd. of Equalization* (2005) 134 Cal.App.4th 969, 974; *Ontario Community Foundations, Inc. v. State Bd. of Equalization* (1984) 35 Cal.3d 811, 816-817; accord, *Marshall v. McMahon* (1993) 17 Cal.App.4th 1841, 1848.) In essence, plaintiffs are contending that DOJ's inclusion of bullet-button semi-automatic shotguns impermissibly sought to expand or enlarge the scope of the governing statute's definition(s) of assault weapons.

In support of this argument, plaintiffs point out that Senate Bill 880 only revised the definition of assault weapons set forth in section 30515, subdivision (a)(1) and (a)(4) relating to certain semi-automatic *rifles* and *pistols* in order to close the bullet-button loophole as to those weapons; however, Senate Bill 880 did not make the same revision as to semi-automatic *shotguns*. (See Stats. 2016, ch. 48, § 1.) Thus, according to plaintiffs, the prior definitional standard for whether a semi-automatic shotgun constituted an assault weapon remained in effect, which was set forth in subdivision (a)(7) of section 30515 as follows: "A semiautomatic shotgun that has the ability to accept a detachable magazine." (Former § 30515, subd. (a)(7); see Cal. Code Regs., tit. 11, former § 5469, subd. (a), now § 5471, subd. (m) [defining " '[d]etachable magazine' " as excluding a magazine removable with a bullet or other tool].) In a nutshell, plaintiffs maintain that because semi-automatic shotguns with a bullet button

11

were not redefined by Senate Bill 880 as assault weapons, DOJ went beyond the scope of the governing statute and exceeded its authority when it included them among the list of weapons that had to be registered as assault weapons under section 30900, subdivision (b).

In response, DOJ asserts that the inclusion of bullet-button semi-automatic shotguns in the regulations implementing Senate Bill 880's registration requirement was consistent with the overriding purpose of Senate Bill 880 to protect the public from dangerous bullet-button weapons, and in any event such inclusion was arguably permissible under the terms of section 30900, subdivision (b)(1), which describes the assault weapons to be registered as including "those weapons with an ammunition feeding device that can be readily removed from the firearm with the use of a tool." Furthermore, DOJ argues that the inclusion of such shotguns in the registration regulations was within the bounds of its broad discretion to fill in the gaps of the legislation.

Having framed the nature of this issue, we conclude that we need not reach it because the issue has been rendered moot by subsequent legislative amendment. Specifically, section 30515, subdivision (a)(7) was recently amended by the Legislature, effective August 6, 2020. Under that amendment, the statutory definition of an "assault weapon" was revised regarding *shotguns* by providing that an assault weapon shall include "[a] semiautomatic shotgun that does not have a fixed magazine." (§ 30515, subd. (a)(7); Stats. 2020, ch. 29, § 38 (SB 118).) By replacing the words "has the ability to accept a detachable magazine" with "does not have a fixed magazine," the 2020 amendment conformed the wording of subdivision (a)(7) to that of subdivisions (a)(1) and (a)(4) -- the same wording used by the Legislature in Senate Bill 880 to close the bullet-button loophole in those provisions. Thus, the 2020 amendment to subdivision (a)(7) of section 30515 clearly added semi-automatic bullet-button *shotguns* to the statutory categories of weapons that would constitute assault weapons.

12

In light of this substantial change in the law, plaintiffs' argument that DOJ's registration regulations are improper to the extent the governing statute (i.e., § 30515) does not expressly define bullet-button semi-automatic shotguns as assault weapons is rendered moot or academic. That is, by virtue of the 2020 amendment revising subdivision (a)(7) of section 30515, AWCA now *includes* bullet-button semi-automatic shotguns in the definition of assault weapons. The former statutory deficiency, if any, or the former discrepancy between the governing statute and the regulations, if any, has been cured by the subsequent amendment. It is well established that an intervening change in the law may result in mootness. (See, e.g., *Association of Irritated Residents v. Department of Conservation* (2017) 11 Cal.App.5th 1202, 1222; *Callie v. Board of Supervisors* (1969) 1 Cal.App.3d 13, 18; *County of San Diego v. Brown* (1993) 19 Cal.App.4th 1054, 1089-1090; *Bravo Vending v. City of Rancho Mirage* (1993) 16 Cal.App.4th 383, 393 [in finding mootness, the version of law in force at present was applied on appeal].) This rule of mootness applies to cases pending on appeal. "'Repeal or modification of a statute [or ordinance] under attack, or subsequent legislation, may render moot the issues in a pending appeal.'" (*Callie v. Board of Supervisors*, *supra*, 1 Cal.App.3d at pp. 18-19.) That is manifestly the case here. Accordingly, due to mootness we decline to reach plaintiffs' challenge to the regulations premised on the "shotgun" issue. (See *Consumer Cause, Inc. v. Johnson & Johnson* (2005) 132 Cal.App.4th 1175, 1183 [courts do not consider moot questions or abstract propositions].)

## III. The Entire Appeal Will Not Be Dismissed as Moot

DOJ argues that because the deadline for registration of bullet-button assault weapons has expired, the regulations governing the registration process are obsolete, and thus plaintiffs' challenge to those regulations in the present appeal is rendered moot or academic. Accordingly, DOJ asks that we dismiss the *entire* appeal on the ground of mootness. We decline to do so, for two reasons. First, if plaintiffs' claim in this appeal that the registration regulations are invalid is determined to be correct, it is unclear

13

whether that determination may potentially affect whether any of the purportedly registered bullet-button assault weapons have in fact been properly or lawfully registered.[9] Proceeding with this appeal may thus prevent there being a cloud on the registrations that have occurred. Accordingly, the case is arguably *not* rendered moot by the mere passage of the registration deadline. Second, the APA serves an important public purpose of establishing procedures that provide security against bureaucratic tyranny. (See *Morning Star Co. v. State Bd. of Equalization* (2006) 38 Cal.4th 324, 333 (*Morning Star*)). Due to the APA's public importance, we think an alleged failure to comply therewith may, in a proper case, be considered on appeal even though a short administrative deadline arguably rendered the challenged regulations obsolete. (See, e.g., *Santa Monica Baykeeper v. City of Malibu* (2011) 193 Cal.App.4th 1538, 1548 [discretionary exceptions to mootness recognized, including where issue is one of public interest which may recur].) For these reasons, although we have applied mootness to a discrete issue or issues in this appeal due to a subsequent statutory amendment (see, e.g., "shotgun" issue above), we decline to dismiss the entirety of plaintiffs' appeal on the basis of mootness allegedly arising from the expiration of the registration deadline.

## IV. The Regulations Were Reasonably Within DOJ's Authority to Implement Bullet-Button Assault Weapon Registration, and Thus Were Exempt from the APA

DOJ adopted regulations that implemented a registration process for the registration by July 1, 2018, of the newly defined bullet-button assault weapons under

---

[9] We note it is also not clear that all of the applications to register bullet-button assault weapons have been fully processed and determined by DOJ. We grant plaintiffs' request for judicial notice of DOJ's response to a Public Records Act (Gov. Code, § 6250 et seq.) request stating that, as of July 11, 2018, over 50,000 applications to register bullet-button assault weapons were still being processed. Plaintiffs also sought judicial notice of a pleading filed in a different case. That part of the request for judicial notice is denied, as the pleading is not relevant to any material issues in this appeal. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2.)

14

Senate Bill 880. (See Cal. Code Regs., tit. 11, §§ 5469-5478.) Plaintiffs' attack on the validity of these regulations is largely based upon plaintiffs' contention that the subject registration regulations went beyond the scope of the APA exemption that was expressly provided in section 30900, subdivision (b)(5). Based on that assumption, plaintiffs further contend the adoption of the registration regulations necessarily had to comply with the APA's procedural requirements, and DOJ's failure to do so invalidates the regulations. As a preface to our consideration of plaintiffs' argument, we briefly outline the following background principles of law: (1) the procedural requirements of the APA, and (2) the scope of DOJ's reasonable discretion in adopting regulations.

## A. *The APA's Procedural Requirements*

The APA subjects proposed agency regulations to certain procedural requirements that must be met for the regulations to become effective. (*Morning Star*, *supra*, 38 Cal.4th at p. 332; see Gov. Code, §§ 11340 et seq.) "'If a rule constitutes a 'regulation' within the meaning of the APA … it may not be adopted, amended, or repealed except in conformity with "basic minimum procedural requirements" (citation) that are exacting." (*Morning Star*, *supra*, 38 Cal.4th at p. 333.) Any regulation or order of repeal that substantially fails to comply with these requirements may be judicially declared invalid. (Gov. Code, § 11350; *Morning Star*, *supra*, 38 Cal.4th at p. 333; accord, *Morales v. California Dept. of Corrections & Rehabilitation* (2008) 168 Cal.App.4th 729, 735-736 (*Morales*).)

Under the APA's procedural requirements, if a proposed rule constitutes a regulation within the meaning of the APA, the following procedural steps must take place: " 'The agency must give the public notice of its proposed regulatory action [citations]; issue a complete text of the proposed regulation with a statement of the reasons for it [citations]; give interested parties an opportunity to comment on the proposed regulation [citation]; respond in writing to public comments [citations]; and forward a file of all materials on which the agency relied in the regulatory process to the

15

Office of Administrative Law (citation), which reviews the regulation for consistency with the law, clarity, and necessity.' " (*Morning Star*, *supra*, 38 Cal.4th at p. 333.)

Unless expressly exempted, all administrative regulations must comply with the APA. (*State Water Resources Control Bd. v. Office of Admin. Law* (1993) 12 Cal.App.4th 697, 704; see Gov. Code, § 11346; see *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 169, fn. 4 [noting "because the Legislature specifically exempted the guidelines from the provisions of [the APA]," no review under APA declaratory relief statute was available].) When the Legislature seeks to exempt regulations from the APA, it does so by clear, unequivocal language. (*United Systems of Arkansas, Inc. v. Stamison* (1998) 63 Cal.App.4th 1001, 1010.) Doubts as to the applicability of the APA's requirements should be resolved in favor of the APA. (*Morales*, *supra*, 168 Cal.App.4th at p. 736.)

Here, as noted, an explicit exemption from the APA was provided by the Legislature in section 30900, subdivision (b)(5). In section 30900, subdivision (b)(1) through (b)(4), which is the portion of the subdivision preceding the exemption language, the requirement is stated for bullet-button assault weapons to be registered by a certain date, including an electronic or internet "public-facing" registration format, and among other things it is specified that such registration process shall include the provision of information to uniquely describe and identify the firearm, the registrant's identity, and shall include the payment of a fee. After these core registration contents are stated, the APA exemption states as follows: "The department shall adopt regulations for the purpose of implementing this subdivision. *These regulations are exempt from the Administrate Procedure Act*." (Italics added.) Thus, it is clear the Legislature, in enacting Senate Bill 880, intended that regulations adopted by DOJ to reasonably implement the registration requirement would be exempt from the APA.

16

### B. The Agency's Broad Discretion

For purposes of our review of plaintiffs' challenge to the validity of the registration regulations adopted by DOJ, it is necessary to consider the nature of DOJ's agency discretion, our standard of review thereof, and the degree of deference, if any, that should be shown.

The California Supreme Court recently summarized the guiding principles for review of cases such as this, as follows: "'Deference to administrative interpretations always is "situational" and depends on "a complex of factors" [citation], but where the agency had special expertise and its decision is carefully considered by senior agency officials, that decision is entitled to correspondingly greater weight.' [Citation.] Where an agency's action is 'quasi-legislative' or 'the substantive product of a delegated *legislative* power conferred on the agency,' the scope of our review is 'limited to determining whether the regulation (1) is "within the scope of the authority conferred" [citation] and (2) is "reasonably necessary to effectuate the purpose of the statute" [citation.]' [Citation.] By contrast, where an agency's action is interpretive or merely 'represents the agency's view of the statute's legal meaning and effect,' the agency's 'interpretation of the meaning and legal effect of a statute is entitled to consideration and respect,' 'but commands a commensurably lesser degree of judicial deference.' [Citation.] [¶] Although the classification of an agency's action as quasi-legislative or interpretive often guides our analysis, we have observed that 'some rules defy easy categorization.' [Citation.] … [I]n certain circumstances, a regulation may have both quasi-legislative and interpretive characteristics – "as when an administrative agency exercises a legislatively delegated power to interpret key statutory terms." ' " (*Christensen v. Lightbourne* (2019) 7 Cal.5th 761, 771-772.)

Here, DOJ was directed to implement a registration program within the purposes of section 30900, subdivision (b)(1) to (b)(4). Such a directive clearly gave to DOJ a quasi-legislative authority to accomplish that purpose. Thus, the scope of our review is

limited to determining whether the challenged regulations are (1) within the scope of the authority conferred and (2) is reasonably necessary to effectuate the purpose of the statute.  (*Christensen v. Lightbourne*, *supra*, 7 Cal.5th at p. 771.)  Where the Legislature has, as here, delegated to an agency the responsibility to implement a statutory scheme through regulations, a reviewing court will not interfere unless "the agency has *clearly overstepped* its statutory authority or violated a constitutional mandate."  (*Ford Dealers Assn. v. Department of Motor Vehicles* (1982) 32 Cal.3d 347, 355-356, italics added.)  " ' " 'The scope of our review of an administrative agency's regulations is *limited*:  we consider whether the challenged provisions are consistent and not in conflict with the enabling statute and reasonably necessary to effectuate its purpose.' " ' "  (*Masonite Corp. v. County of Mendocino Air Quality Management Dist*. (1996) 42 Cal.App.4th 436, 447, italics added.)

In undertaking this review, we also keep in mind that the regulations under consideration need not simply mirror the statutory language, but may fill in details to further the purpose of the governing legislation:  " ' " 'In enacting such rules and regulations, the Board is empowered to fill up the details of the enabling legislation. [Citation.]  The court's role is to decide whether in enacting the specific rule the [agency] reasonably interpreted the legislative mandate.' " ' "  (*Masonite Corp. v. County of Mendocino Air Quality Management Dist*., *supra*, 42 Cal.App.4th at p. 447.)  '"An administrative agency is not limited to the exact provisions of a statute in adopting regulations to enforce its mandate.  "[The] absence of any specific [statutory] provisions regarding the regulation of [an issue] does not mean that such a regulation exceeds statutory authority ….'  [Citations.]  The [administrative agency] is authorized to " 'fill up the details' " of the statutory scheme.' "  (*PaintCare v. Mortensen* (2015) 233 Cal.App.4th 1292, 1307; accord, *Batt v. City and County of San Francisco* (2010) 184 Cal.App.4th 163, 171.)  Similarly, the agency's authority also includes the power to elaborate the meaning of statutory terms.  (*GMRI, Inc. v. California Dept. of Tax & Fee*

*Administration* (2018) 21 Cal.App.5th 111, 125.) It is also a well-settled principle of administrative law that in the absence of an express statutory directive to the contrary, an agency may exercise its discretion in selecting the methodology by which it will implement the authority granted to it. (*Community Water Coalition v. Santa Cruz County Local Agency Formation Com.* (2011) 200 Cal.App.4th 1317, 1328.)

In determining whether an agency has incorrectly interpreted the statute it purports to implement, a court generally gives weight to the agency's construction. (*Western States Petroleum Assn. v. Board of Equalization* (2013) 57 Cal.4th 401, 415.) " 'Nevertheless, the proper interpretation of a statute is ultimately the court's responsibility.' " (*Id.* at pp. 415-416.) "'When a regulation is challenged on the ground that it is not "reasonably necessary to effectuate the purpose of the statute," our inquiry is confined to whether the rule is arbitrary, capricious, or without rational basis [citation] and whether substantial evidence supports the agency's determination that the rule is reasonably necessary [citation].' [Citation.] The question of 'reasonable necessity' generally implicates the agency's expertise; therefore it receives a much more deferential standard of review." (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1048.)

The party challenging a regulation has the burden to show its invalidity. (*Delta Stewardship Council Cases*, *supra*, 48 Cal.App.5th at p. 1049.)

### C. *The Regulations Were Reasonably Necessary to Accomplish Statutory Mandate*

The trial court concluded the regulations were reasonably necessary to the accomplishment of the statutory purpose of creating an effective registration process for bullet-button assault weapons, and the regulations were also reasonably within DOJ's authority to fill in the details of the legislation. Accordingly, the trial court concluded that plaintiffs had failed to show DOJ exceeded the scope of the APA exemption. As the trial court expressed in its order: "DOJ is authorized to 'adopt regulations for the purpose

19

of implementing' the authorizing statute. [Citation.] The regulations at issue here each appear to do just that, such that the APA exemption would apply. The challenged regulations ensure that eligible weapons are registered, by eligible applicants, through an understandable registration process."

Based on our independent review, we conclude the trial court was correct. As we have noted hereinabove, section 30900, subdivision (b)(5), delegated quasi-legislative power to DOJ to create a registration program for bullet-button assault weapons. In doing so, DOJ was not limited by the specific language of section 30900, subdivision (b), but could appropriately fill in the details of what was reasonably needed to accomplish an effective registration program. As more fully discussed below, that appears to be precisely what DOJ did in adopting the regulations at issue in this appeal. Further, plaintiffs have failed to meet their burden of demonstrating the invalidity of any of the regulations.

Below, we consider plaintiffs' main arguments raised as to specific aspects of the registration regulations.

### 1. The Breadth of the Regulations

Plaintiffs generally object that the registration regulations "concern themselves not [merely] with *how* to register 'bullet-button assault weapons,' but instead with *what* may be registered, *who* may register, or the conditions for registration." But plaintiffs, whose burden it is to affirmatively demonstrate the regulations' invalidity (*Delta Stewardship Council Cases*, *supra*, 48 Cal.App.5th at p. 1049), offer no adequate explanation why regulations implementing an effective registration process should not address these key topics. Moreover, as DOJ has cogently explained, implementing an effective bullet-button assault weapon registration program reasonably required addressing several interrelated matters: "To administer the registration process, DOJ found it necessary to promulgate regulations that make it possible to: determine the types of firearms that can be registered (registration definitions); register weapons that the Legislature has required

to be registered (registration of bullet-button [assault weapons]); obtain information necessary to uniquely identify each registered weapon (serial number and digital photo requirements) or confirm an applicant's eligibility to register a firearm (registration information requirements); prevent abuse of the joint registration option ('family member' definition and proof-of-address requirements); establish parameters for the electronic registration process required by law (terms of use); and prohibit subsequent modification of registered weapons into weapons that first became prohibited almost twenty years ago, and have been unlawful to acquire since then (modification prohibition).… [T]hese regulations ensure that only eligible weapons are registered, only by eligible applicants, through a transparent, reliable process."

We find DOJ's explanation to be persuasive. The topics covered by the regulations may be broad, but they are interrelated and reasonably impact whether the registration system implemented by DOJ will be understandable, reliable and effective. Further, DOJ is within its discretion to fill in such details to accomplish the legislative purpose. (See *PaintCare v. Mortensen*, *supra*, 233 Cal.App.4th at p. 1307.) We conclude the registration regulations at issue herein were within the scope of the authority conferred and reasonably necessary to effectuate the statutory purpose. (See *Christensen v. Lightbourne*, *supra,* 7 Cal.5th at p. 771.) Additionally, we note "the question of 'reasonable necessity' generally implicates the agency's expertise; therefore it receives a much more deferential standard of review." (*Delta Stewardship Council Cases*, *supra*, 48 Cal.App.5th at p. 1048.) For all these reasons, we reject plaintiffs' argument that the breadth of the topics covered in the regulations means they were outside the bounds of the APA exception set forth in section 30900, subdivision (b)(5).

### 2. Inclusion of Bullet-Button Shotguns

We have already addressed in this opinion, plaintiffs' contention that the regulations impermissibly included the registration of bullet-button *shotguns* because, as was noted by plaintiffs, Senate Bill 880 only amended the definition of assault weapons

to include bullet-button rifles and pistols. As we concluded hereinabove, the question has been rendered moot by subsequent statutory amendment. That is, under a 2020 amendment revising subdivision (a)(7) of section 30515, AWCA now *includes* bullet-button semi-automatic shotguns in the definition of assault weapons. (§ 30515, subd. (a)(7) [an assault weapon includes "a semiautomatic shotgun that does not have a fixed magazine"]; Stats. 2020, ch. 29, § 38.) As previously explained, due to this issue becoming moot, we decline to reach it.

### 3. Consolidation of Definitions Related to Bullet-Button Registration Process

Plaintiffs challenge the validity of the definitional provisions contained in the registration regulations (see Cal. Code Regs., tit. 11, § 5471) as going beyond the scope of the APA exemption. Plaintiffs' argue that DOJ, in adopting the subject regulations, repealed five valid definitions in former section 5469 of the California Code of Regulation that had been applicable to the identification of assault weapons – which repeal would have required APA compliance. However, as correctly pointed out by DOJ, plaintiffs' argument fails because the subject definitional provisions were not repealed, but simply consolidated to a new location. (See former Cal. Code Regs., tit. 11, § 5469 [former site of five definitions for purposes of § 30515]; cf. Cal. Code Regs., tit. 11, §§ 5469, 5471 [new location of definitional provisions].) Two of the subject definitions (i.e., "forward pistol grip" and "thumbhole stock") were moved to section 5471 of the regulations without change. (Cal. Code Regs., tit. 11, § 5471, subds. (t), (qq).) The remaining three (i.e., " 'detachable magazine,' " " 'flash suppressor,' " and " 'pistol grip that protrudes conspicuously beneath the action of the weapon' ") were moved to California Code of Regulations section 5471 of the regulations without substantial change, with specific qualifying examples added. (Cal. Code Regs., tit. 11, § 5471, subds. (m), (r), (z).) Certainly, it would be within DOJ's reasonable discretion in establishing an effective registration program to have definitions consolidated in one

22

place – i.e., a single section of the regulations containing the registration definitions -- to reduce confusion during the registration process. In any event, no actual repeal or deletion has been shown. Based on the foregoing, we reject plaintiffs' contention that certain definitions were improperly repealed or deleted under the registration regulations.

Plaintiffs' second argument challenging the definitional provisions of the registration regulations (see Cal. Code Regs., tit. 11, § 5471) is that some of the terms defined therein are not specifically related to the registration of bullet-button assault weapons. Based on that premise, plaintiffs argue the definitional provisions exceeded the APA exemption, and thus APA procedures had to be followed. We disagree. As DOJ persuasively maintains, the subject definitions are relevant to the registration process by helping clarify and summarize much of the technical statutory terminology referred to in section 30515 for purposes of implementing the registration requirement of section 30900, subdivision (b). Among other things, setting forth such definitions would appear to be reasonably necessary for the public to readily understand what types of weapons would constitute a bullet-button assault weapon, and what types of weapons would not, under the various technical terms.[10]

As the trial court correctly observed, "[t]he APA exemption granted by the Legislature would appear to include the power to define terms to enable the public to understand and comply with the registration process." Additionally, DOJ's assessment of

---

[10] We note the majority of the definitions provided in section 5471 of the California Code of Regulations are clearly relevant to the registration process by either (1) summarizing and clarifying various basic or technical terminology used to define and differentiate types of assault weapons, and/or by (2) specifically defining essential terms for whether a particular weapon has the features or attributes that would make it a bullet-button assault weapon for purposes of the registration requirement. (See, e.g., Cal. Code Regs., tit. 11, §§ 5471, subds. (a), (b), (c), (e), (f), (j), (m), (n), (p), (q), (r), (t), (v), (y), (z), (ee), (gg), (hh), (ll), (nn), (pp), (qq), (rr); compare, 30515, subd. (a)(1), (a)(4) & (a)(7).) Other definitional provisions appear to be indirectly relevant to the process of registration, such as by identifying unique features that may need to be reported when registering (e.g., Cal. Code Regs., tit. 11, § 5471, subds. (d) & (x) [re: barrel length]).

23

what definitional provisions would be reasonably necessary to facilitate the statutory purpose of implementing an effective registration program under section 30900, subdivision (b), as well as to reasonably fill-in the details thereof, were matters within its considerable agency expertise to which deference is appropriate. (See *Yamaha Corp. of America v. State Bd. of Equalization*, *supra*, 19 Cal.4th at pp. 11-12.) For all the foregoing reasons, we conclude that the definitional provisions adopted by DOJ in the registration regulations (i.e., Cal. Code of Regs., tit. 11, § 5471) were within the scope of the statutory authority conferred upon DOJ by section 30900, subdivision (b)(5) and were reasonably necessary to effectuate the purpose of the statute. Accordingly, the definitions did not exceed the scope of the APA exemption.

We note further that, according to DOJ, plaintiffs' argument the requirements of the APA had to be followed as to the definitional provisions has arguably been rendered moot because of subsequent regulatory action. That is, in January 2019, a separate regulation promulgated by DOJ under the APA's procedural requirements became effective, which regulation incorporates by reference each of the definitions set out in section 5471 of the registration regulations. This separate regulation, codified as section 5460 of title 11, California Code of Regulations, provides as follows: "The definitions of terms in section 5471 of this chapter shall apply to the identification of assault weapons pursuant to Penal Code section 30515." (Cal. Code Regs., tit. 11, § 5460.) By and through the adoption of this separate regulation which incorporates by reference the definitions at issue, the subject definitional provisions have apparently been vetted through the APA procedures, which arguably renders plaintiffs' challenge thereof moot. DOJ argues we should so hold. However, we do not rely on mootness in rejecting plaintiffs' APA-based challenge of the definitional provisions, primarily because APA compliance as to the separate regulation (i.e., Cal. Code Regs., tit. 11, § 5460) has not been adequately developed by citation to the record or judicially noticeable facts.

24

### 4. The Serial Number Requirement

Plaintiffs challenge the requirement of serial numbers in connection with the registration of bullet-button assault weapons manufactured by an unlicensed subject (also referred to as FMBUS or home-built firearms), which serial number would be assigned by DOJ prior to the home-built weapon's registration. (Cal. Code Regs., tit. 11, §§ 5472, subds. (f) & (g); 5474.2.) Plaintiffs contend this requirement goes beyond the scope of the governing statute and exceeds DOJ's regulatory discretion. We disagree. Section 30900, subdivision (b)(3) expressly requires that the registration of an assault weapon include descriptive information necessary to identify it uniquely. In carrying out that mandate, it was within DOJ's reasonable authority to require such home-built assault weapons have an assigned serial number. As explained by DOJ: "DOJ-issued serial numbers for registered homebuilt weapons will allow law enforcement to positively identify such weapons if they are encountered in the field, are used in a crime, or need to be confiscated from persons prohibited from possessing firearms. Owner-selected serial numbers (e.g., the initials of the person who built the weapon and the date it was built) would not ensure a unique identifier, because unlike serial numbers applied by federally licensed manufacturers, another owner may assign another weapon the same identifier." These concerns specifically relating to the need for more adequate and stable identification of home-built weapons reflects that the challenged regulations were reasonably necessary.

We conclude plaintiffs' challenge of the serial-number requirement for home-built assault weapons fails. Moreover, because the subject regulations were proper when adopted, which is a sufficient basis to reject plaintiffs' challenge, we need not consider whether subsequent legislation (i.e., § 29180, subd. (b) [serial number requirement]) taking effect after the registration deadline may have potentially supplanted these particular regulations.

### 5. The Non-Liability Clause

Plaintiffs challenge former regulation section 5473, which had included a provision limiting DOJ's liability with respect to posting of information electronically. The subject regulation has subsequently been repealed (former Cal. Code Regs., tit. 11, § 5473). Therefore, any challenge thereof has been rendered moot and we do not address plaintiffs' contention.

### 6. Required Registration Information

Plaintiffs argue that some of the personal information required for registration by California Code of Regulations, title 11, section 5474, subdivision (a), was improper because it went beyond the core information stated by section 30900, subdivision (b)(3). Section 30900, subdivision (b)(3), provides that registrants must provide among other information their "full name, address, telephone number, date of birth, sex, height, weight, eye color, hair color, and California driver's license number or California identification card number." The challenged regulation requires further information such as military identification number (if applicable), place of birth, country of citizenship, and alien registration number or I-94, if applicable. (Cal. Code Regs, tit. 11, § 5474.) We reject plaintiffs' argument because there is no merit to the assumption that the regulations must only repeat the authorizing statute. (*PaintCare v. Mortensen*, *supra*, 233 Cal.App.4th at p. 1307; accord, *Batt v. City and County of San Francisco*, *supra*, 184 Cal.App.4th at p. 171.) Rather, as we have noted, an administrative agency is authorized to fill up the details of the statutory scheme, in order to accomplish the statutory purpose. (*PaintCare v. Mortensen*, *supra*, p. 1307.) Integral to an effective registration process, DOJ must be able to confirm that applicants are not prohibited by state or federal law from possessing a firearm, prior to registration. (§ 30950.) The additional information requested in the regulation was clearly relevant to that purpose. (See 18 U.S.C. § 922, subd. (g).)

26

Plaintiffs also challenge the requirement for "clear digital photos" (Cal. Code Regs., tit. 11, § 5474, subd. (c)) based on the statute's reference to providing a "description" rather than a literal "depiction" of the firearm (see § 30900, subd. (b)(3)). But, as we have emphasized, " '[a]n administrative agency is not limited to the exact provisions of a statute in adopting regulations to enforce its mandate." (*Paintcare v. Mortensen*, *supra*, 233 Cal.App.4th at p. 1307.) Clear digital photographs would reasonably assist in uniquely identifying the weapon, as required by statute, and would also allow DOJ to confirm that the weapon was accurately described in the application and is eligible for registration (e.g., whether it has a bullet button).

We conclude the informational requirements set forth in this regulation were consistent with the statutory purpose and reasonably necessary to implement an effective registration process.

### 7. Joint Registration Requirements

One of the registration regulations adopted by DOJ addressed the qualifications for a joint registration by family members in the same household. (Cal. Code Regs., tit. 11, § 5474.1, subd. (b).) The regulation stated that joint registrants must have one of the following family relationships: "(1) Spouses [¶] (2) Parent to Child [¶] (3) Child to Parent [¶] (4) Grandparent to Grandchild [¶] (5) Grandchild to Grandparent [¶] (6) Domestic Partners [¶] (7) Siblings." (*Id.*) In challenging this regulation, plaintiffs argue that another statute, i.e., section 30955, provides for joint registration of assault weapons "owned by family members residing in the same household." According to plaintiffs, since section 30955 does not limit the nature of the family relationships that may qualify, it was improper for DOJ to do so here, or at least it could not do so within the scope of the APA exemption -- i.e., APA procedures had to be followed. DOJ responds that its regulation specifying the family relationships that qualify for joint registration of bullet-button assault weapons was within its quasi-legislative authority to implement the

registration process concerning such weapons, as a means of preventing the joint registration option from being misused.

We agree with DOJ that the adoption of regulations to implement an effective registration process for bullet-button assault weapons may reasonably include the adoption of measures to prevent abuses of that process. Furthermore, section 30955, subdivision (a), states in full: "The department's *registration procedures* shall provide the option of joint registration for any assault weapon… owned by family members residing in the same household." (Italics added.) Since DOJ was mandated under the terms of section 30900, subdivision (b)(5), to implement registration procedures for bullet-button assault weapons, the issue of joint registration was appropriately considered. It was also within DOJ's agency expertise to have recognized that aspects of joint registration may be subject to misuse. On balance, we conclude that the regulation supplying a reasonable interpretation of "family members" for purposes of determining how to administer the joint registration of bullet-button assault weapons was properly within the purview of DOJ's quasi-legislative authority conferred in this case, and came within the APA exemption. (See, e.g., *Association of California Ins. Companies v. Jones* (2017) 2 Cal.5th 376, 399 [the Legislature may grant an administrative agency broad authority to apply its expertise in determining whether and how to address a matter requiring regulation].)

### 8. Prohibition on Modification of the Registered Weapons

California Code of Regulations, title 11, section 5477 states that "[t]he release mechanism for an ammunition feeding device on an assault weapon registered pursuant to Penal Code section 30900, subdivision (b)(1) shall not be changed after the assault weapon is registered." In short, this regulation prevents a bullet-button assault weapon from being converted into a weapon that was prohibited and could not have been lawfully registered under Senate Bill 880, such as by the removal of the bullet-button mechanism to create a quick-release assault weapon. We reject plaintiffs' challenge of this

28

regulation. As persuasively argued by DOJ: "It cannot be that the Legislature intended to allow the bullet-button assault weapon registration process to be used as a means of manufacturing previously prohibited assault weapons. DOJ's authority to implement the registration process necessarily includes authority for regulations securing the registration process against this type of abuse, which would undermine assault weapons restrictions that have been on the books for decades. The regulation is thus related to and reasonably necessary for the registration process." We agree with DOJ's argument and conclude this regulation was within DOJ's statutory authority and reasonably necessary to effectuate the purpose of the law.

## V. Any Error in Demurrer Ruling Was Not Prejudicial

Plaintiffs argue the trial court erred by sustaining DOJ's demurrer on the ground that plaintiffs could only proceed by traditional mandamus, rather than declaratory relief. On this question, we note that it does appear our courts have allowed questions of APA compliance, including issues of whether exemptions or exceptions to the APA were applicable, to be addressed by claims for declaratory relief. (See, e.g., *California School Bds. Assn. v. State Bd. of Education*, *supra*, 186 Cal.App.4th at p. 1335 [APA questions raised in causes of action that included declaratory relief]; *California Advocates for Nursing Home Reform v. Bonta* (2003) 106 Cal.App.4th 498, 504 [APA questions presented by a complaint seeking declaratory and injunctive relief along with writ of mandate under Code Civ. Proc., § 1085]; see also, *Morales v. California Dept. of Corrections & Rehabilitation*, *supra*, 168 Cal.App.4th at p. 735 [holding APA applied to certain prison regulations, rejecting applicability of exception, and declaring regulations invalid for failure to comply with APA procedures].) Further, this would appear to be consistent with the general principle that where the nature of the action being challenged is quasi-legislative in character, such as an agency's adoption of regulations, it is reviewable by traditional writ of mandate *or* by declaratory relief under section 1060 of the Code of Civil Procedure. (See, e.g., *Pacific Legal Foundation v. California Coastal*

*Com.*, *supra*, 33 Cal.3d at pp. 168-169; *Simi Valley Adventist Hosp. v. Bonita* (2000) 81 Cal.App.4th 346, 354; see also, Gov. Code, § 11350, subd. (a) [expressly authorizing declaratory relief under APA].)**11**

But even assuming the trial court erred in its demurrer ruling, we would conclude there was no prejudice. Our explanation of lack of prejudice requires some further elaboration of the procedural background, which we set forth below.

As previously outlined hereinabove, plaintiffs' original complaint included causes of action for declaratory relief seeking a judicial determination that the registration regulations, or provisions thereof, were invalid because, among other things, DOJ failed to comply with the APA's procedural requirements. The complaint acknowledged the statutory exemption from the APA under section 30900, subdivision (b)(5), but alleged the exemption did not apply because the subject matter of the regulations exceeded the scope of the APA exemption and even impermissibly sought to alter or expand the terms of the governing statute. DOJ demurred to the complaint on the ground that the only proper vehicle for plaintiffs' challenge was a petition for writ of mandate, rather than an action for declaratory relief. (See *Tejon Real Estate, LLC v. City of Los Angeles* (2014) 223 Cal.App.4th 149, 155 [demurrer may be sustained where the complaint attempts to obtain review of an agency's administrative decision via declaratory relief rather than mandamus].) In support of this ground for demurrer, DOJ argued plaintiffs were

---

**11** Government Code section 11350 of the APA specifically provides that "Any interested person may obtain a judicial declaration as to the validity of any regulation … by bringing an action for declaratory relief in the superior court in accordance with the Code of Civil Procedure." (Gov. Code, § 11350, subd. (a).) *However*, section 11350 is not available where the regulations were within a statutory exemption to the APA. (*Pacific Legal Foundation v. California Coastal Com.*, *supra*, 33 Cal.3d 158 at p. 169, fn. 4.) But here, the crux of the matter was the legal question of whether the regulations were within the scope of the APA exemption. In any event, we note plaintiffs did not rely exclusively on Government Code section 11350, but also sought declaratory relief under Code of Civil Procedure section 1060.

30

essentially challenging DOJ's discretionary *administrative decision* that adopting the registration regulations did not require APA compliance but could be done through the expedited "file and print" process because the regulations came within the scope of the statutory exemption.

Plaintiffs opposed the demurrer, arguing they were not seeking review of any administrative decision by DOJ, but were instead challenging the validity of the regulations themselves based on DOJ's failure to comply with the APA and also based on allegations the regulations were inconsistent with or sought to alter or expand the AWCA.

The trial court agreed with DOJ's characterization of the challenged action as an *administrative decision* and, accordingly, sustained DOJ's demurrer to the complaint with leave to amend. Plaintiffs filed a first amended complaint. In substance, the first amended complaint appears to have retained the declaratory relief causes of action intact, while adding separate claims for relief by writ of mandate.[12] After the first amended complaint was filed, plaintiffs notified the parties of a hearing date to determine the merits of their claims for writ of mandate *and* declaratory relief. Following that hearing, the trial court issued its order denying all relief under the first amended complaint. Although the trial court's order analyzed plaintiffs' claims within the framework of writ of mandate, the trial court nonetheless addressed plaintiffs' various legal challenges to the regulations and reached the following disposition: "[T]he petition [for] writ of mandate, and declaratory and injunctive relief, is denied."

Based on the above procedural history and our assessment of the trial court's order denying all relief under the first amended complaint, we conclude that regardless of how the causes of action were formally denominated in the pleading, the substance of the

---

[12]     Since plaintiffs did not amend the declaratory relief claims, it does not appear that plaintiffs waived the right to challenge the demurrer ruling as to those claims.

dispositive legal questions in this case were declared and decided, including the questions of whether DOJ failed to comply with the APA and whether the regulations came within the scope of the statutory exemption. We have likewise addressed those same legal questions in the present appeal. Here, as the trial court did, we have concluded that plaintiffs have failed to demonstrate the invalidity of the regulations, either under the APA or an alleged conflict with the AWCA. In summary, even assuming the trial court's ruling on demurrer was incorrect, it has made no material difference to the outcome or resolution of the dispositive legal questions. For these reasons, we conclude that even if the trial court's demurrer ruling was erroneous, any such error was not prejudicial and is not ground for reversal.[13]

## DISPOSITION

The judgment of the trial court is affirmed. Defendants are entitled to an award of costs on appeal.

SMITH, J.

WE CONCUR:

HILL, P.J.

DE SANTOS, J.

---

[13] Also, inasmuch as we have upheld the validity of the regulations, there is no actual or present controversy. (See *Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan* (2007) 150 Cal.App.4th 1487, 1497 [declaratory relief is appropriate only for actual present controversy, not to redress past wrongs].)